Bichakdson, J.,
delivered the opinion of tlie coart:
On tbe 8th day of May, 1869, the claimant, Francis, entered into a written contract with the chief quartermaster of the military department of Dakota Territory, by which, among other things, he agreed to deliver at the post of Fort Bansom one thousand cords of wood, at the price therein agreed upon, on or before the 1st day of January then next; the first delivery to be on or before the 1st day of August, 1869.
At the very commencement of proceedings under this contract, said Francis executed and delivered to Nathan Myrick a power of attorney, of which the following is a copy:
“Know all men by these presents that I, Charles Francis, of Saint Paul, Minnesota, have appointed, and by these presents do make, constitute, and appoint, Nathan Myrick, of the same place, my true and lawful attorney, for me and in my name, place, and stead, do hereby authorize the said Nathan Myrick to take and receive all vouchers, and the same sign and draw the money thereon, under a certain contract between myself, of the one part, and the United States, by General Holabird, deputy quartermaster-general, of the other part, dated May 8th, 1869, for the delivery at Fort Bansom, in Dakota Territory, of one thousand cords of wood; granting unto my said attorney full power to perform everything whatsoever required and necessary to be done, as 1 might or could do if personally present, without revocation.
“In witness whereof I have hereunto set my hand and seal the thirty-first day of May, in the year one thousand eight and sixty-nine.
]ns
“OHABLES + FBANOIS. .[seal.]
mark.
“'Witness as to Charles Francis’ mark—
“Samuel Mayall.
“ Signed, sealed, and delivered in presence of—
“J. P. Allen.
“J. A. Allen.”
[Two 35 cts. stamps affixed.]
Said Myrick did all the work under the contract, delivered the 1,000 cords of wood, received payment therefor at different *640 times, aud gave receipts “as the attorney in fact” of said Francis, in full for the quantity delivered; and in consideration of money advanced, labor performed, and materials furnished, said Francis transferred the claim, for which this action is brought, to Myrick, and authorized him to collect the same, and to bring this action to his own use.
The question presented for our determination upon this part of the case is whether or not those facts prove such a transfer of the contract or any interest therein as to cause the annulment thereof, so far as the defendants are concerned, under the provisions of the Act July 17, 1862, § 14, (12 Stat. L., p. 596; Bev. Stats., § 3737,) which is as follows:
“That no contract or order, or any interest therein, shall be transferred by the party or parties to whom such contract or order may be given to any other party or parties, aud that any such transfer shall cause the annulment of the contract or order transferred so far as the United States are concerned :• Provided, That all rights are hereby reserved to the United States for any breach of such contract by the contracting party or parties.”
The obvious reason for this enactment was to secure to the United States the personal attention and services of the contractor, and to render him liable to punishment under the sixteenth section of the same act for any fraud or willful neglect of duty, and the more effectually to accomplish the latter purpose it was enacted in the sixteenth section of the same act that every such contractor should be deemed and taken as part of the land or naval forces of the United States, aud subject to the rules and regulations thereof.
No technical formal written transfer of the contract was proved in this case, nor would any such be likely to be made by parties knowing the stringent provisions of the statute, even if an assignment in fact were agreed upon between them. It is sufficient to annul the contract, if the facts disclose a substantial transfer of an interest therein, by whatever means attempted, or however much disguised. In the case of McCord v. The United States, (9 C. Cls. R., p. 156,) the only evidence of an asssignment was the averment in the petition that a third party was the equitable owner of one-third interest in the contract, and this court held that the contract was annulled thereby. In Wheeler v. The United States, (5 C. Cls. R., p. 504,) *641 which was a casein some respects similar to this, Judge Milligan, referring to the statute, well said that it was “ broad and comprehensive in its terms, and not to be evaded by refined subtleties or ingenious argument.”
Here, in the case at bar, was given to Myrick an irrevocable power of attorney, “ to take and receive all vouchers, and sign the same, and draw the money thereon,” in the name of Francis, with “full power to perform everything whatsoever required and necessary to be done.” This was a full and complete assignment of an important interest covering all the money payable by the defendants for the wood to be delivered, and, being irrevocable, it was an attempt to take from the contractor the whole direct power and control over the material resources to be derived from a faithful performance of his agreements.
When we take into consideration other facts in the case, the reason for giving this power of attorney, and its intended force and effect as an assignment, become still more apparent. Myrick not only did all the work under the contract, delivered all the wood, and received' all money paid by defendants, but now brings this action to recover damages, an unliquidated, uncertain, and disputed claim, for being interfered with in the performance of his work. With the making of the contract and giving the irrevocable power of attorney Francis wholly disappears from the case, and Myrick becomes the only person having further dealings with the Government officers concerning the business. And yet Myrick could not be deemed and taken to be a part of the Army of the United States, and subject to punishment under section 16 of the act of July 17,1862, for fraud of1 neglect of duty as therein provided respecting contractors.
We think, also, that the statute forbidding transfers was passed with a still further object, to secure Government contracts to bona-fide contractors, who intended to perform the duties as well as to assume the liabilities thereof, and to prevent parties from acquiring mere speculative interests, which are demoralizing, and lead to irregularities and fraud.
We are all of opinion that the claim of the petitioner’s counsel that Myrick was only an employé of Francis is not supported by the natural and reasonable inferences to be drawn from the facts; but that, on the contrary, upon all the facts found by the court, it is sufficiently shown that- he had a direct *642 and irrevocable interest in the contract transferred to him by the original contractor. This caused an annulment of the contract as to any rights of both or either of them thereunder against the defendants, aud bars a recovery in this action, even if there were a good cause of action but for this assignment, as to which it is not necessary to express an opinion.
The judgment of the court is that the claimant’s petition be-dismissed.