## FRANCIS *v.* UNITED STATES.

*A contract entered into between A. and the Quartermaster's Department of the
Army, for the delivery of a number of cords of wood at a post on a military
reservation, stipulated that no traders, sutlers, contractors, civilians, or others
should be allowed to cut timber about said post, until all required by the
United States for certain purposes was secured. The contractor cut a part
of the wood on the reservation, when he was directed by the post commander
to cut outside the reservation, which he did. Having performed his contract,
he was paid in full for all the wood delivered thereunder. Held, that the
contract prohibited him from cutting wood within the reservation, and that
he cannot recover damages for any expense he incurred by reason of being
compelled to cut and haul, from a point outside the reservation, the wood
necessary to complete his contract.*

APPEAL from the Court of Claims.

This suit was brought by Charles Francis, for the use of
Nathan Myrick, to recover damages on account of extra ex-
penses incurred in the performance of a contract entered into,
May 8, 1869, between Francis and the chief quartermaster of
the military department of Dakota, for the delivery by the
former, on or before Jan. 15, 1870, of a number of cords of
wood at certain military posts; among others, at Fort Ransom,
Dakota Territory, one thousand cords. The contract "stipu-
lated and agreed that no traders, sutlers, contractors, civilians,
or others should be allowed to cut timber about the post of
Fort Ransom, D. T., until all required by the United States,
for certain purposes herein specified, should have been secured."
This stipulation was inserted pursuant to General Order No.
18, which is as follows: —

"HEADQUARTERS DEPARTMENT OF DAKOTA,
"SAINT PAUL, MINN., May 12, 1868.

"Post commanders in this department will assume control of all
timber, wood, hay, and grazing upon the public lands adjacent to
their respective posts, which are required for the public use thereat.
Notice of the reservation of the timber, wood, &c., thus made will
be thoroughly circulated in the manner best calculated to inform all
who are or may become interested, in order to avoid all disputes of
rights which might arise through ignorance.

"On all such reservations sutlers, traders, and civilians generally

will not be allowed to cut timber, wood, nor hay, nor be allowed to graze animals, until the wants of the garrison are supplied for the year.

"By command of Brevet Major-General Terry.

"O. D. GREENE,
"*Assistant-Adjutant-General.*"

The Court of Claims found that the post of Fort Ransom was situated on the public domain, surrounded by the public lands of the United States, and had, by an order from the head-quarters of the department of Dakota, dated May 18, 1869, which was approved by the Secretary of War and by the President Jan. 11, 1870, been declared a military reservation by that name, with the following boundaries: "The initial point is eight miles due south of the south-west angle of the fort; thence due east five miles; thence due north ten miles; thence due west ten miles; thence due south ten miles; thence due east five miles to the initial point."

That, prior to June 1, 1869, but near that time, the claimant commenced cutting wood on said reservation, at a point about a mile and a half from the fort, and had cut about forty cords, when he was ordered by the post commander to desist, and remove beyond the lines of the reservation. He then removed to a point within them, about four miles from the fort, and there cut three hundred and ten cords, when the post commander ordered him to stop cutting at that place, move off the reservation, and not to cut any wood within the lines thereof, but to cut wherever he pleased outside of them. The contractor then and there claimed the right, under his contract, to cut on the reservation; which claim the post commander refused to recognize. Thereupon, he cut the remaining six hundred and fifty cords required to be furnished by him at a point about seven miles from the fort, and from half a mile to a mile beyond the lines of the reservation.

That, in September, 1869, the claimant commenced hauling to the fort the wood which he had cut on the reservation at a point four miles from the fort, when the post commander stopped the work, and would not permit him to haul the wood, because it had been cut within the lines of the reservation, in disobedience of positive orders.

The claimant appealed to General Hancock, who overruled the post commander, decided that the contractor had a right to cut wood on the reservation, and to haul what had been so cut. By reason of the order of the post commander, nine teams of the claimant remained idle thirteen days, to his expense of $468; but it does not appear that he might not have employed them during that time in hauling the wood cut off the reservation, which he was not prohibited from moving.

That there was sufficient wood on the reservation for the known wants of the post; and the claimant could have obtained, either at or near the place where he cut the first forty cords, or at the place where he cut the three hundred and ten cords, the whole quantity required by the contract, had he not been interfered with by the orders of the post commander.

That, by reason of said orders, and by being compelled thereby to cut the remaining quantity of wood at greater distances from the fort, he was subjected to an additional expense of $2,132, in hauling the same to the place of delivery.

That it does not appear how much more expense, if any, the claimant was subjected to by reason of cutting the six hundred and fifty cords outside of the reservation, over and above what he would have incurred had he been permitted to cut them within it, at the place where he cut the three hundred and ten cords, and from which he was ordered away by the post commander.

That the claimant has been paid for one thousand and three cords of wood, delivered under the contract, the money therefor having been paid at different times, and a receipt therefor given in full for the quantity delivered.

On the foregoing facts, the court concluded, as a matter of law, that the claimant was not entitled to recover, and it dismissed his petition. He thereupon appealed to this court.

*Mr. John B. Sanborn* for the appellant.
*The Solicitor-General, contra.*

Mr. Justice Clifford delivered the opinion of the court.

Post commanders in the military department where the present controversy arose were ordered to assume control of all timber, wood, hay, and grazing upon the public lands adjacent

to their respective posts, to the extent that the same were there required for the public use.

Supplies for the post were usually obtained by contract; and it appears that a contract was made between the petitioner and the quartermaster of the department, by which the former agreed to deliver and pile, in the wood-yard of the post, one thousand cords, more or less, of good, sound, merchantable oak-wood, to be delivered at the times specified, subject to such inspection as the quartermaster should deem necessary. Super-added to that is also the stipulation that no trader, sutler, contractor, or civilian will be allowed to cut timber about the post; and it appears that the post referred to is situated on the public domain, and that it was surrounded by the public lands.

Before the work was commenced, the contractor executed a power of attorney to the person for whose use the suit is brought; and it appears that the attorney did all the work under the contract as agent for and in the name of the contractor.

Pursuant to the contract, due deliveries were made by the attorney, to the amount of one thousand and three cords of wood; for which he was paid at different times, he receipting for the same, as attorney-in-fact of the contractor, in full for the quantity delivered. Payment in full for all that was delivered is established by the findings; but the petitioner insists that the United States broke the contract, by not allowing the attorney to cut the wood within the defined limits of the post; that he was refused that privilege; and that he was compelled to cut it at a greater distance from the place of delivery, at an expense of $2,132 beyond what it would have cost if he had been allowed to cut it within the military reservation, as he had a right to do under the contract, for which he claims compensation: and he also alleges that the United States obstructed the delivery of the wood, so as to cause him an additional expense of $468, which he also claims to recover.

Hearing was had; and the Court of Claims dismissed the petition, and the claimant appealed to this court.

Throughout, the attorney or agent of the contractor claimed the right to cut the wood within the military reservation, evidence of which is seen in the fact that he commenced cutting

about a mile and a half from the fort, where he cut forty cords before he was ordered by the post commander to desist, and to remove beyond the lines of the reservation. Whatever he may have claimed, he obeyed the order, and removed to another point, four miles from the fort, though still within the reservation; and there he cut three hundred and ten cords of the wood, when the commander of the post ordered him to stop cutting at that place, and to move outside of the reservation. Responsive to that order, he set up the claim that he had a right, under the contract, to cut the wood within the reservation; but the post commander refused to recognize any such right, and denied the claim.

Opposite views were evidently maintained by the parties; but the claimant yielded, and cut the balance of the wood required, to wit, six hundred and fifty cords, at a point half a mile or a mile beyond the limits of the reservation, and about seven miles from the fort.

Neither party attempted to rescind the contract; nor did the agent of the contractor cease to act under it, as he completed the cutting of the wood, and subsequently delivered it at the place designated in the contract, and collected the amount due to him at the contract price. Quantity, price, and place of delivery are all fixed in the contract; but nothing is said about the place where the wood is to be cut, except what may be properly inferred from the provision that no traders, sutlers, contractors, civilians, or others shall be allowed to cut timber about the post until all required by the party of the second part, to wit, the United States, for the purposes herein specified, shall have been secured; and that it shall be the duty of the post commander to enforce the stipulation as made and provided.

Beyond all question, the post commander denied the right of the attorney, under the contract, to cut the wood within the lines designating the military reservation; and it is equally clear that the agent of the claimant finally acquiesced in the views of the post commander, so far as respects the cutting of the wood.

Damages are claimed by the petitioner because he was not allowed to cut the wood within the military reservation; but it is clear that the claim cannot be supported, for several reasons,

either of which is sufficient to show that the judgment of the court below is correct: 1. Because the terms of the contract do not give the contractor the right which he claims. 2. Because the contract, when properly construed, prohibits the contractor from cutting wood within the reservation. 3. Because the contractor having acquiesced in the order of the post commander, and cut the wood outside of the reservation, and having since hauled and delivered the wood, and received his pay in full for the same under the contract, it is too late to prefer such a claim against the United States.

Controversy respecting the cutting of the wood ceased when the cutting was completed; but when the claimant commenced hauling the wood cut within the reservation, four miles from the fort, the post commander stopped the work, and would not permit him to haul the wood, because it had been cut within those lines in violation of positive orders. To that decision the claimant objected, and appealed to the commanding general, who overruled the order of the post commander, and decided that the contractor had a right to cut wood within the reserva-, tion, and to haul that which had been so cut. What the contractor then wanted was not the privilege of cutting wood within the reservation, but the right to haul that which he had previously cut within those lines in violation of the post commander's orders; and his appeal having been sustained, he was allowed to haul the wood, as he claimed the right to do. Having previously cut the wood, he wanted to haul it to the place of delivery, and he was permitted to do what he desired.

Suppose the decision of that high officer is correct, which is not admitted, it is clear that it cannot benefit the claimant, so far as respects the cutting of the wood, as it was all cut before the appeal to that officer was taken; and there is no pretence that the claimant ever afterwards attempted to cut any wood within the lines of the reservation, or that any request of his for such permission was ever after that refused.

Viewed in the light of these suggestions, it is clear that the petitioner is not entitled to recover any thing for the alleged extra expense of hauling the wood to the place of delivery, in consequence of the refusal of the post commander to allow him to cut it within the lines of the military reservation.

Even suppose that it is so, still it is insisted by the petitioner, that, inasmuch as the order of the post commander stopping the work of hauling the wood cut within the reservation was overruled by the commanding general, he, the appellant, is entitled to recover for the damage which he suffered by his teams remaining idle for thirteen days; but the court is not able to sustain that proposition, as it appears that he delivered the wood under the contract, collected and received the contract price for the same, and gave receipts in full for the same as a transaction completed in pursuance of the written contract set forth in the petition. Competent evidence of such acts is sufficient to prove an accord and satisfaction, and they show that there is no error in the record.

*Judgment affirmed.*