Murray Thompson, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Kibbey W. Couse, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 25005, 25006. Promulgated May 21, 1952.

*Benjamin Alpert, Esq.*, for the petitioners.
*Francis X. Gallagher, Esq.*, for the respondent.

OPINION.

RAUM, *Judge:* Petitioner Couse owned 95 per cent of the stock of Couse Laboratories, Inc., and dominated its affairs. At the time of its dissolution on October 31, 1942, it had uncompleted contracts calling for the production and delivery of war goods for an aggregate price of $8,416,746.13. Petitioner Couse had designed and developed the mobile machine shops and signal towers which were the subject matter of the contracts, and these contracts had been awarded to the corporation originally by reason of the know-how possessed by petitioner Couse, in whom the War Department had confidence. It was estimated as of October 31, 1942, that the completion of these contracts would result in a profit of $1,314,506.21.

Upon dissolution of the corporation, Couse reported as capital gain, the excess of the value of his share of the corporation's net assets distributed to him over his basis ($2,375) in the stock of the corporation. However, he included in the value of the assets thus received his proportionate share of an alleged value of $1,314,506.21 applicable to the war contracts, which he treated as having been distributed by the corporation on dissolution. Thus, he in effect paid a capital gains tax on his portion of the profits which were anticipated from the uncompleted war contracts, and now contends that since he contributed his share of the contracts to the partnership subsequently formed the value of these war contracts must be "amortized" or depreciated in the hands of the partnership.

The consequence of this contention is that the profits earned by the partnership on the war contracts could not be taxed unless and only to the extent that they exceeded the "basis" thus attributed to them. In substance, the effort is made to avoid paying taxes at ordinary rates on income earned from the performance of the war contracts by attempting to pay a capital gains tax with respect thereto at the dissolution of the corporation.[3] We think the effort must fail.

Petitioners contend that the uncompleted war contracts were distributed to the corporation's stockholders upon dissolution; that the

---

[3] The Commissioner accepted Couse's returns for the year 1942 (in which the dissolution occurred) to the extent that Couse included his proportionate share of the "value" of the contracts in computing his capital gain. However, the Commissioner originally treated that amount as "good will." Couse contends that there was no good will in fact, and the Commissioner now states in his brief that he "does not press the point that such good will as the corporation may have had, had any ascertainable market value at the time of dissolution." Accordingly, if the Commissioner should prevail herein upon the principal issue, then Couse's computations for 1942 must be revised so as to eliminate from his capital gain for that year any value attributable to the war contracts.

distributees or their successors (Thompson having succeeded to the minority interest of Maud Dale) then contributed these contracts to the partnership formed by Couse and Thompson; and that the partnership acquired the contracts at a basis, recoverable through depreciation or "amortization," equal to their market value at that time. At the trial petitioners attempted to prove, through expert witnesses, that the contracts "distributed" by Couse Laboratories, Inc., had a fair market value of about $750,000 or $800,000. We do not pause to consider certain basic difficulties which would be inherent in accepting such valuations of the contracts, for we are satisfied that the corporation did not and could not distribute or transfer any valuable interest in these contracts, and that the partners did not contribute such an interest to the partnership.

Section 3737 of the Revised Statutes (41 U. S. C., sec. 15), dealing with Government contracts, provides as follows:

No contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties, are reserved to the United States.

The Westinghouse contracts contained a provision that they could not be assigned without the consent of Westinghouse.

One of the purposes of section 3737 of the Revised Statutes was to give the United States the assurance that it would have the attention and services of the contractor with whom it undertook to do business. See *Francis* v. *United States*, 11 Ct. Cl. 638, 640, affd., 96 U. S. 354. A contractor cannot avoid a contract or thrust a substitute party upon the United States merely by "transferring" it to someone else. See 16 Ops. Atty. Gen. 277, 279; 18 Ops. Atty. Gen. 88. This does not mean, however, that the Government may not enter into a new contractual relationship with a purported transferee. And the ruling of the Comptroller General (9 Comp. Gen. 72), relied upon by petitioners, goes no further than that. The Comptroller General stated that where the contractor sells his entire business "as distinguished from merely an assignment of the Government contract," a transferee "may be recognized" by the United States in certain circumstances as the lawful successor in interest of the contractor. The petitioners urge that this ruling permits the transfer of Government contracts in connection with the sale or transfer of an entire business.

We do not agree with the petitioners' interpretation of the Comptroller General's ruling. It does not in any way modify or change the prohibition contained in section 3737 against the transfer of Government contracts or any interest therein. It differentiates between the sale of the entire business of a contractor, and a transfer or assign-

ment of the contract itself. It authorizes, but does not require, a Government department to recognize a transferee as the lawful successor in interest of the contractor where the transferee acquires the contractor's entire business. The Comptroller General's ruling does not authorize a corporation which sells its entire business to sell or transfer to the purchaser the right to fill uncompleted Government contracts which it had at the time of sale. And it is important that any new arrangement entered into by the Government be not obscured by nomenclature. For, whether the arrangement be viewed as a "novation," or the approval of an "assignment," or a "substitution" of parties, the fact is that it derives vitality only from a new contractual relationship established between the United States and the new party.

Thus, the original contracts had no ascertainable fair market value, because the corporation was powerless to make an assignment that would effectively substitute the assignee for it as the party to perform the contracts, and because there was no assurance that any prospective purchaser would satisfy the Government of its capacity to perform, and thereby procure new contracts in place of the old. Particularly is this true in the present case, where the corporation obtained the original contracts by reason of the special skills and know-how of petitioner Couse who controlled the corporation's affairs. Whether petitioner Couse would continue his personal efforts in relation to these contracts if they were "sold" to some "willing buyer" is a matter of pure conjecture, and we cannot say that any successor in interest would have been acceptable to the Government.

Any transfer of the uncompleted contracts and orders which the corporation had at the time of its dissolution would not confer upon the transferee the right to fill them, and this is true even though the transfer is denominated an "assignment," the corporation the "assignor," and the transferee the "assignee." Petitioner Couse and Maud Dale may have acquired physical possession of the contracts when the corporation was dissolved, but they never became entitled to and never acquired from it the right to complete them and be paid. Never having acquired this right or any interest therein, Couse could not transfer to the partnership a 95 per cent interest in the contracts and Maud Dale could not transfer a 5 per cent interest to Thompson which he in turn could transfer to the partnership. It, therefore, cannot treat the contracts and orders and the right to fill them as property contributed by the petitioners in arriving at a "basis," for "amortization" or depreciation. It acquired that right as the result of new contractual relations entered into with the War Department and Westinghouse and it paid nothing therefor. It could have and subsequently did obtain similar war contracts without cost. Having received nothing of value from the partners in relation to the uncom-

pleted war contracts, and paid nothing for the right to complete them, it has no basis to recover through depreciation or "amortization" allowances.

In view of the conclusion reached above, it becomes unnecessary to consider whether unfilled contracts and orders such as those here involved would otherwise qualify as depreciable assets. Cf. *U. S. Industrial Alcohol Co.*, 42 B. T. A. 1323, affd. (C. A. 2) 137 F. 2d 511.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*