## ARGUED AND DETERMINED

IN THE

# SUPREME JUDICIAL COURT

OF

# MASSACHUSETTS.

---

FRANK L. ALLEN *vs.* INHABITANTS OF MELROSE.

Worcester. February 27, 1903. — June 19, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Contract*, Construction, Performance and breach.

In an action by a sewer contractor against a town for compensation for extra work, the plaintiff is not entitled to recover outside of his contract by showing that the working profiles prepared by the engineer of the town, in accordance with which the work was performed; required deeper excavations than those required by the plans referred to in the contract, if the contract provides that the engineer may make alterations in the grade and that any increase in the amount of work thus caused shall be paid for according to the quantity actually done and at the price established for such work under the contract and fixes the prices for excavations much deeper than those required by the profiles on file at the time of the contract, and it appears that the lowering of the grade required by the engineer was within the terms of the power given him by the contract.

A contract to construct a system of sewers for a town provided that delay on the part of the sewer commissioners in furnishing materials should not give cause for claims for damages but that the time for completing the work should be so far extended as the engineer should judge necessary to compensate for such delay, and that alterations made in the form of the materials should be paid for at the price established for such work under the contract. In an action on this contract, it appeared, that there was a delay on the part of the defendant in furnishing sewer pipe and that the plaintiff was ordered by the defendant's

engineer to lay the sewer of brick until the pipe arrived. A claim was made by the plaintiff for damage caused by the delay and for the expense of getting ready to lay the brick. *Held*, that the plaintiff could not recover on this item, as under the contract there could be no claim for damages for delay in furnishing the sewer pipe and the contract price for the masonry included the expense of getting ready.

CONTRACT, with a first count setting forth a contract in writing for the construction of a system of sewers for the defendant claiming compensation thereunder and for extra work, and a second count upon an account annexed. Writ dated February 17, 1897.

In the Superior Court the case was heard by *Gaskill*, J., without a jury. By agreement of parties the case was submitted upon an auditor's report, a stenographer's report of the evidence taken before the auditor, and certain exhibits. The defendant made thirty-seven requests for rulings, some of which were given by the judge, others refused, and others modified or given in part. The judge found for the plaintiff in the sum of $9,236.36 ; and the defendant alleged exceptions.

*G. L. Mayberry & F. L. Washburn*, for the defendant.

*H. L. Parker*, for the plaintiff.

HAMMOND, J. 1. The principal question in this case arises upon the charges set forth in the bill of particulars marked " D," and annexed to the plaintiff's declaration.

After the execution of the contract and before the work was begun, the engineer concluded to lower the grade of the sewer at its outfall into the metropolitan sewer one and seven tenths feet. The original profile plans of the sewer, which were made before the contract was signed, did not give the exact distances of the sewer below the surface of the ground, but gave the distances above a base line or " datum plane " fixed and customarily used in such work. As the work progressed it was necessary for the engineer to prepare working profiles for the use of the contractor. In making these working profiles, the engineer made the sewer one and seven tenths feet deeper at its outlet into the metropolitan sewer than as shown upon the original profiles, and made a corresponding increase in depth in the main trunk lines, the additional depth growing less and becoming nothing at the upper end of the trunk lines, and made corresponding changes in some of the lateral sewers which

ran into these main lines.   At other points in the lateral sewers the direction of the sewers was slightly changed, and in some cases the sewers were laid less deep and in others deeper than the original profiles indicated.

The work was performed in accordance with these working profiles.   The plaintiff offered evidence tending to show that this lowering of the grade of the sewers necessitated the excavation of several thousand cubic yards of material more than was required by the plans referred to in the contract; that most of this material was fine quicksand under water, and this extra excavation was thereby rendered very expensive.   And he contended that the change in grade was so radical and extensive as not to be covered by the terms of the contract, and that he was entitled to a fair compensation for this extra excavation regardless of the prices fixed by the contract.   The bill of particulars marked " D," with the exception of item 17, which has been disallowed, sets out the amount claimed by the plaintiff for this work, in addition to the contract prices.   The defendant contended on the contrary, that this change was fairly within the terms of the contract, and that the contract prices were applicable to it.   The judge sitting without a jury " found" that this departure from the original plans was a change of the sewerage system, refused to rule that the plaintiff could not recover any of the items set forth in D, and found for the plaintiff upon them (except the 17th) in the sum of $3,585.47.

The real question is whether such a change in the plans was fairly within the terms of the contract.   If it was, then the contract price must govern, and nothing can be recovered upon the claims set forth in D.   It is a question of construction.

The contract was for the construction of certain sewers in the town of Melrose, an inland town, and it evidently covered a large territory.   Under it were constructed sewers in forty-one different streets, and the length of sewer pipe laid exceeds five miles.   The outlet of the system was the metropolitan sewer. The sewage was to be collected in the various branches, carried to the main trunks, and finally to the outlet, by gravitation.   For this it was necessary that there should be a gradual fall in the grade.   The advertisement for proposals contains an estimate

of the amount of excavation at a depth not exceeding eight feet, at a depth between eight and twelve feet, and so at various depths down to twenty feet, and also an estimate of the sizes and lengths of the pipes required and of the other things about the sewer, but it is expressly stated that these estimates are to be considered " as approximate only, and are given merely as a basis for comparison of bids, and the right is expressly reserved of increasing or diminishing the same, as the engineer may deem necessary." In his proposal in response to this advertisement, the plaintiff did not propose to do the work for one round sum, but to do the excavation at given prices according to the various depths; and as to the other matters the same course was pursued. The contract followed the same plan. It is expressly stated therein that the estimates contained in the advertisement calling for proposals are only approximate, and the plaintiff agrees to " do everything required to build and to put in complete working order the said sewers and all structures appertaining thereto, in accordance with the plans on file in the office of the engineer of said town, the lines, levels, and grades, and the requirements and directions in relation to the same, given the contractor from time to time by said engineer." The contract further provides that " the engineer may make alterations in the line, grade, plan, form, dimensions, or material of the work herein contemplated, either before or after the commencement of construction. If such alterations diminish the quantity of work to be done, they shall not constitute a claim for damages, or for anticipated profits on the work that may be dispensed with ; if they increase the amount of work such increase shall be paid for according to the quantity actually done, and at the price established for such work under this contract." The contract then fixes the price per cubic foot for excavation between the various grades. Prices are expressly fixed in this way for the excavation between the surface of the ground and eight feet below, between twelve and sixteen feet below, and so on, the last being between twenty-six and thirty-two feet, the prices increasing with the depth. It appears from the final estimate of the work actually done that even at the grade as finally established by the engineer, which at the lower end of the sewer was one

and seven tenths feet below the grade shown by the plans at the time the contract was made, there was no excavation below a depth of twenty feet, and less than five hundred cubic yards at a grade below sixteen feet. It fairly may be assumed therefore, that both parties understood that, unless either by lowering the grade or by changing the route of the pipes changes were made in the depth of the excavations, there could be no occasion for providing a price for excavation to the depth of thirty-two feet.

In view of the language of the advertisement and of the proposal, the nature of the undertaking, the importance of properly adjusting the grade of pipes through which the sewage was to be carried by gravitation to the outlet the grade of which seems to have been fixed, the comparatively slight changes in grade permitted by the conditions, the express provision that the engineer might " make alterations in the line, grade, plan, form, dimensions, or material of the work herein contemplated, either before or after the commencement of construction," the fact that by the contract prices were fixed for excavations to a depth much greater than that required by the profiles on file at the time of the contract and that the price was to be according to the number of cubic yards and to the depths, we are of opinion that this was not simply a contract to do the work required by the plans on file at the time it was made, but was a contract to do the work as that plan then was or might thereafter be changed, within the limits permissible under the physical conditions and within the general scope of the system, in accordance with the power expressly given to the engineer, and that the lowering of the grade by him was within the terms of the power.

There is a plain distinction between this case and cases like *Wood* v. *Fort Wayne*, 119 U. S. 312, upon which the plaintiff largely relies. In that case it was held that even if the changes were authorized by the contract, " the contract fixes no special rate for laying the pipe under the river, and it cannot fairly be said that there was any contract rate for work of the class of that done " in making the change. Here the contract expressly provides prices for excavations of the kind for which the plaintiff seeks to recover. The evidence did not warrant a finding

that the change was not within the contract. It follows that the contract fixed the price of this work, and the request that the plaintiff could not recover anything on this branch of the case should have been given.

The judge found for the plaintiff upon items 1 and 2 in the bill of particulars marked " B." These items were charges for work done in taking up and relaying some pipes on Main Street. As to this the defendant asked the judge to rule that the plaintiff was bound by his contract and was not entitled to extra compensation for the work. We think that this exception raises simply the question whether the plaintiff is entitled to extra compensation for this work. If he was, then so far as respects this exception the finding should stand regardless of the question whether the pleading properly states the claim. It is true that at the close of the evidence the defendant asked for a ruling that there could not be a recovery upon any of the items contained in this bill of particulars, but we do not understand that as to these two items it intended to raise any question not specifically named in this first ruling.

Upon the evidence the judge might have found that the pipes were originally laid in a proper way and at the proper grade; that for some cause due in no respect to any act or failure of contractual duty on the part of the contractor, the pipes had settled so that it became necessary to take them up, to put in a new foundation and to relay the pipes; and by the order of the engineer this was done. Upon such a finding we think that, to the extent of the work below grade at least, it comes within specifications 4 and 13 of the contract, and that as to this part it is not work which has become " damaged from any cause " within the meaning of specification 80. Since some portion of the work was within the contract, the ruling requested was properly refused.*

Item 12 of the bill of particulars marked " B," was for " damage caused by delay of 20-in. pipe, and getting ready for brick sewer." As to this it appeared that during the progress of the work there was a delay by the defendant in furnishing sewer pipe, and the plaintiff was ordered by the engineer to lay the sewer of

---

* The decision on this point depended wholly on the special provisions of the contract.

brick until the pipe arrived; that he made preparations to lay and did lay something like two hundred feet of the brick sewer at an extra expense to himself, as alleged in this item, before the arrival of the sewer pipe. We understand this not to be a claim for compensation for laying the brick, but for damage caused by the delay and for the expense of getting ready to lay the brick. It is expressly provided in the contract that "delay on the part of the commissioners, in furnishing materials, is not to give cause for claims for damages, but the time for completing the work shall be so far extended as the engineer shall judge necessary to compensate for such delay." It is also provided that alterations made in the form of the materials shall be paid for at the price established for such work under the contract. Inasmuch as the contract price for the masonry includes the expense of getting ready, and as there can be no claim for damages for delay in furnishing the sewer pipe, the ruling that the plaintiff could not recover upon this item should have been given.

As to the claim set forth in the bill of particulars marked "F," the defendant contended that the plaintiff could not recover because an engineer's certificate had not been furnished him as required by the contract. It is plain from the action of the judge upon the requests given that he must have found that this provision of the contract had been waived. Without going over the evidence in detail, it is sufficient to say that we are of opinion that the evidence warranted the finding.

Except as hereinbefore stated, we see no error in the manner in which the court dealt with the various requests for ruling. The result is that the exceptions are sustained as to item 12 in the bill of particulars marked "B," and as. to the items contained in the bill marked "D," and all others are overruled.

*So ordered.*