Campbelu, Chief Justice,
delivered the opinion of the court:
The plaintiff, as appears from the petition, had a contract with the United States to manufacture nine 12-inch barbette gun carriages, in accordance with certain drawings and specifications, for which it was to be paid $49,000 each. Deliveries were to begin on or before January 3,1918, and be completed as to all of the nine carriages by or be *233 fore July 3, 1918. The contract was dated January 3, 1917. It was agreed that the Ordnanee Department would furnish the steel castings required by the work, beginning on or before April 3, 1917, and completing same on or before October 3, 1917. It is averred that after making the contract, and on account of the war with Germany, the castings intended for use in the gun carriages were diverted to other work regarded as more vital, and on that account or for other reasons satisfactory to the Ordnance Department it neglected to furnish plaintiff with the castings in accordance with the above terms, and the first castings were not delivered to the plaintiff until August 27, 1917, nor were the last of the castings for the nine carriages delivered until June, 1919, more than a year after the entire work was to have been completed. It is also averred that after the work was under way the Ordnance Department made numerous changes in the plans, which changes operated further to hinder and delay the plaintiff and added substantially to the cost of the performance. It is averred that the plaintiff would have completed the work within the time required by the contract but for the delays caused by the Government, and that on account of these delays and during the period of them the rates of wages prevailing for the classes of labor necessarily employed were greatly increased, resulting in damage to the. plaintiff on account of increases in labor cost in the amount of $150,000; and, further, that during the period of delay the plant overhead expenses chargeable to this work amounted to $75,000.
Upon completion and delivery of the gun carriages, the contractor called attention to the delays caused by the Ordnance Department, and the contracting officer certified that the Ordnance Department had been responsible for the contractor’s failure to deliver all of the. gun carriages by July 3, 1918, and that there should not be assessed against the plaintiff any damages on account of the delay. The provision of the contract relative to the assessment of liquidated damages for the contractor’s delay provided for the ascertainment of the cost by the contracting officer, and he having certified as above stated, the plaintiff was allowed the full contract price for the carriages. It is specifically averred *234 that the contractor’s claim set up in the petition in this cause was not presented to the War Department or General Accounting Office. The plaintiff claims on account of excess labor costs $150,000, and on account of excess overhead costs $75,000. The defendant has demurred to the petition, and the question, therefore, is whether in the circumstances stated an action can lie in favor of the plaintiff.
When a contract has been performed and a stipulated consideration has been paid the general presumption is that the transaction is a closed one. If there be claims on the part of the Government which should limit the amount of a stipulated payment necessary to close the transaction they are asserted, and, generally speaking, are deducted if they are known at the time. If there are claims on the part of the contractor which affect the amount due and payable to him under the terms of the contract, or for an alleged breach of it, they should be asserted at or before the time a settlement is made. The Government is entitled to know, when it makes what it believes to be a final payment on its contract, what claims a contractor intends to assert against it on account of the contract. It is its right to know whether the supposed final payment is in fact final and conclusive. It should not be required to wait for this information until such time as it may suit the convenience of the other party to bring his suit in the Court of Claims. If suit can be brought in two years, or even in less time, it may be brought in six years, the period prescribed by the statute of limitations. In the meantime the Government’s witnesses may become scattered or have failed to keep records they otherwise would preserve and its means of defense destroyed or greatly impaired. The doctrine implied in the plaintiff’s theory of this case is that no settlement which the authorized agents of the Government having the contract in charge may make is final or conclusive on the contractor if he has kept silent about a claim for unliquidated damages growing out of what he conceives to be a breach of the contract. It has been frequently said that if a party keeps silent when he ought to speak he will not be heard thereafter to speak when he ought to remain silent. The petition avers that the defendant delayed the work, but it does not aver that plaintiff *235 interposed any objection or protest to such delay. It alleges specifically that its claim now attempted to be asserted was not made at or before the settlement wherein it received the final payment due by the terms of the contract and was exonerated from liability for liquidated damages. The petition does not negative, and it is therefore to be inferred that the usual vouchers and receipts passed between the parties.
A contention similar to that made by plaintiff in this case was urged in the case of Swift & Co. v. United States, 14 C. Cls. 235, where the plaintiff had received the payments stipulated for in their contracts and receipted therefor in full, and when the work was completed they receipted for the final contract payment without protest or objection. Thereafter they instituted suit to recover damages alleged to have been sustained through delays caused by alterations in the plans, which damages they' allege “ resulted from a great rise in the prices of materials and labor 'during the period of delay, largely increasing the cost to them of constructing the vessels,” that being the character of work involved in their contract In the instant case a large part of the alleged damage is “ on account of increases in labor costs ” induced by defendant’s delays and additional overhead expenses resulting from the same alleged cause. In the Swift & Co. case (p. 246) is the following language, which is applicable here:
“ In passing upon this claim we need not discuss the point whether increased cost resulting from rise in prices would be a legal ground for the recovery of damages under the circumstances of this case, for the claimants have by their own acts barred their right to recover on that ground. Whatever claim of that kind they had was a part of their whole claim on account of the contract work, and should have been asserted before they received and finally receipted in full for the whole contract price, without a word of demand for more on the score of the rise in prices. They could not settle and receive the contract price and then set up a separate claim for damages. This point was, as we conceive, settled, in effect, by the Supreme Court of the United States in Baird v. United States, 96 U. S. 430, where it was held that a recovery of judgment in this court for a part of what was due under a contract at the time the suit was brought in which the judgment was recovered was a bar to a subsequent suit for the residue. The principle *236 there laid down is equally applicable to this case, where the claimants, at the time when their whole claim was due, received the stipulated payments and receipted therefor in full, without even a hint that they considered themselves justly entitled to more. Such acts clearly prove an accord and satisfaction. Francis v. United States, 96 U. S. 354.”
In the Gearing case, 48 C. Cls. 12, 25, 29, the failure of the plaintiff to seasonably present his claim was commented on adversely to his contention, the court saying: “The claimant’s silence in presenting this claim is not without significance.” Again, in the Joice case, 51 C. Cls. 439, 446, the court animadverted upon the attempt to enforce a claim alleged to have arisen out of a contract which had been performed where payment was accepted without protest or objection, and the claim itself had not been presented to the party representing the Government. It was said: “The final payment was received in August and he presented the claim here sued upon to the War Department in March of the following year, more than six months after the matter had been closed. ‘ It is, therefore, plain that the interpretation he now puts on his contract is an afterthought and is not the interpretation put upon it by the parties when it was executed ’ or when it was performed.” And in a late case, the Philadelphia Steam Heating Company, 258 U. S. 120, the Supreme Court say: “ So far as appears, no protest was ever made against the prolonged suspension; nor was there any claim made of a right to damages arising therefrom until it was asserted in this suit.”
The plaintiff relies upon Cramp & Sons case, 216 U. S. 494. It is true that it was there said that “ the Secretary of the Navy had no power to pass upon and adjudicate claims for unliquidated damages,” and his action in conceding to the plaintiff in that case a right to sue for such damages in this court was upheld. But it is not to be overlooked that Cramp & Sons asserted they had a claim for unliquidated damages before any settlement was arrived at, and the Secretary settled the balance of the claim. Clearly he could have refused to make any settlement and left the party to his remedy upon the whole contract. In the instant case the plaintiff did not acquaint the officer with the fact, or what it now alleges to be the fact, namely, that it had a *237 claim for unliquidated damages. It was careful enough, to claim that the Government had delayed the work and that therefore it should not be charged with the stipulated liquidated damages. Upon what theory of right dealing could it withhold the claim it now seeks to assert ? Until the rule is changed by statute or the Supreme Court, it is to be conceded that an administrative officer has no power to pass upon and adjudicate claims for unliquidated damages. It not infrequently happens in Government contracts that they contain terms which authorize settlements of differences arising out of their construction or performance. Whether the head of an executive department, authorized to make a contract, may agree with the contractor as to the amount of the latter’s damages, and thereby liquidate the amount, and whether in such case the Comptroller or the Comptroller General may lawfully authorize the payment of the amount so agreed upon out of an available appropriation, are questions not before us for decision in this case. We should at least hesitate to say that there can be no finality of settlements of Government contracts, or claims arising therefrom, except at the end of lawsuits. We hold upon this phase of the case that the plaintiff should have presented or otherwise made known its alleged claim for damages before the settlement was made, and having failed and showing no valid reason for its failure to do so, it can not maintain the present action.
In the second place, the contract itself precludes the plaintiff’s suit. While it provides for liquidated damages in the event the plaintiff delays deliveries, it provides for corresponding extensions of time where the delays are chargeable to the Government’s fault. It provides that the contractor shall receive credit for all delays which the contracting officer may determine to have been due to the Government’s action, and for such other delays as he may decide to have been due to a number of other causes, but it also provides that “ none of the above causes shall constitute a basis for action against the United States for damages.” If there were otherwise a cause of action on account of alleged delays, this stipulation is sufficient to defeat it. See Merchants' Loan & Trust Co. case, 40 C. Cls. 117; Wells *238 Bros. Co. case, 254 U. S. 83; Charles F. Wood et al. case 258 U. S. 120. The demurrer should be sustained and the plaintiff granted 30 days in which to amend its petition. It is so ordered.
Graham, Judge; Hat, Judge; DowNey, Judge; and Booth, Judge, concur.