(97 South. 296)

No. 25678.

## J. DEVEREUX O'REILLY & CO. v. POLICE JURY OF ST. TAMMANY PARISH.

(June 4, 1923.   Rehearing Denied July 11, 1923.)

*(Syllabus by Editorial Staff.)*

**1. Highways ⬳113(4)—Engineer's testimony that there was other work for contractor's teams though gravel laid held conclusive.**

Where a highway construction contract provided that engineer's decision on questions arising thereunder should be final and binding, the engineer's testimony that there was enough other work to keep contractor's teams busy, notwithstanding police jury's delay in delivery of gravel, and requiring that they be kept on the job, is conclusive.

**2. Highways ⬳113(4)—Under express terms of contract, police jury held not liable for delay in delivery of gravel.**

Where a highway construction contract provided that the good roads commission, as agent of parish, should furnish gravel, but should not be liable for slow delivery, the police jury was relieved of responsibility for failure to deliver gravel as called for by contractor, even if contractor was in position to handle it.

**3. Highways ⬳113(4)—No greater deduction allowed, for work done over, than amount admitted by contractor, in absence of other evidence.**

Where, in suit by highway contractor against police jury, there was no evidence of amount or value of work done over other than contractor's admission that it was worth $400, no greater deduction could be allowed.

Appeal from Twenty-Sixth Judicial District Court, Parish of St. Tammany; Prentiss B. Carter, Judge.

Action by J. Devereux O'Reilly & Co. against the Police Jury of St. Tammany Parish. From a judgment for defendant, plaintiffs' appeal. Reversed, and judgment for plaintiffs granted.

J. C. Gilmore and Thos. Gilmore, both of New Orleans, and Harvey E. Ellis and J. C. Cappel, both of Covington, for appellants.

Lewis L. Morgan and Thomas M. Burns, both of Covington, and J. Vol Brock, Dist. Atty., of Franklinton, for appellee.

ST. PAUL, J.   Plaintiffs had a contract with defendant to build a certain road in St. Tammany parish, for which they were to receive, and did receive, $47,986.37, less the sum of $1,016.15, of which more hereafter.   The gravel was to be furnished by the defendant, and plaintiffs were to do the work.

The following provisions of the contract are pertinent:

"Section 9. The undersigned (contractor) further declares that he has examined the specifications, including all special provisions and form of contract, and that he is thoroughly familiar with them.

"Section 14. The undersigned (contractor) hereby makes statement that the following equipment is owned or controlled by him, and that it is the equipment which he proposes to use in the work, to wit, 30 teams, 10 slips, 10 wheelers, 20 wagons, 1 scraper, 2 trucks.

"Section 35. If any material or machinery are to be furnished the contractor by the good roads commission (acting for the parish) there will be inserted under 'Special Provisions' articles describing the materials or machinery and stating the conditions under which they are to be furnished.

"Section 51. The plant and equipment owned or controlled by the contractor shall be of sufficient size to meet the requirements of the work.   Except upon the written permission of the engineer, there will not be allowed any changes in the plant or equipment employed in the work, which shall have the effect of decreasing its capacity below that of the plant or equipment named in article 14 of the proposal.

"Section 80. It is agreed by both parties to this contract that the engineer shall act as referee in all questions arising under the terms of this contract between the parties thereto, and the decision of the engineer in such cases shall be final and binding upon both alike.

"Section 87. It is understood by the contractor that the compensation as provided in the contract is full payment for furnishing of material, labor, tools and equipment, and for performing the work contemplated and embraced under the contract; also for all loss or damages arising out of the nature of the work or from the action of the elements, or from any unforeseen difficulties or obstructions which may arise or be encountered during the prosecution of the work, and for all risks of every description connected with the prosecution of the work; also for any expense incurred by or in consequence of the suspension

or discontinuance of said work as herein specified. * * *

"Special Provision. In compliance with paragraph 35 of the specifications, the Good Roads Commission will buy the gravel necessary for this surfacing project and pay the freight on same under the following conditions: That the Contractor will initiate his work and order all gravel as needed and that the Commission will not in any way be liable for slow delivery, as it is intended that the Contractor will know the capacity of the outfit he proposes to use and that he will place his orders in sufficient time to have delivery assured. * * * "

### I.

Petitioners allege that they duly notified defendant that from and after March 22, 1920, and until further notice they would require 8 cars of gravel per day, and in order to handle same had assembled a large equipment consisting of 2 trucks, 23 mules, 10 wagons, 16 slips, and other implements. That the police jury delivered only 147 cars between March 23d and September 28 (being 189 running days), although during said time petitioners made repeated demands for gravel. That for said 189 running days their entire outfit of 10½ teams, or 21 mules and 10 wagons, lay idle; said teams being worth $126 per day (say $12 per team), a total of $23,814. That during said period defendant advised petitioners that it would be unable to deliver any gravel for a period of 30 days (the month of June); whereupon petitioners removed its equipment to the city of New Orleans, but was notified to return the same at once, which petitioners did. And they pray for judgment against defendant for said $23,814.

### II.

The claim, even if well founded, is much exaggerated. It takes no account of Sundays, or of the fact, as shown by the evidence, that in work of this sort as much as one-third of the working days may be lost owing to weather conditions; so that 120 days, or 20 days a month for the 6 months, would be nearer the mark. Moreover it fails to take into consideration that the 140 odd cars delivered in said 120 working days would have occupied one or two teams handling gravel only.

But the fact of the matter is that there was a great deal of other work to be done in the way of grading, filling, etc., and that up to the time when plaintiffs took off their equipment in June that equipment was not as much as half the equipment they had promised to keep on the contract. And on April 7th plaintiff, although it had as yet handled only 18 cars since March 23d, asked a reduction to 3 cars per day, afterwards increased to 4 per day, and in June the demand was made for 5 cars per day.

[1, 2] As to whether or not there was enough of other work to be done to keep the other eight or nine teams busy, there is a conflict of testimony. But the engineer testifies that there was, and by the terms of the contract (section 80) his decision is conclusive. Moreover the contract, as above stated, expressly provided that the defendant was not to be responsible for slow deliveries of gravel (special provision), and that any expense incurred by suspension or discontinuance of the work was to be borne by the contractor (section 87). And the evidence shows that the defendant did all it could to obtain gravel for plaintiffs, and the delays in getting deliveries were due to transportation conditions and to the inability to get the gravel when ordered.

We are of opinion that, by the very terms of the contract, defendant was relieved of responsibility for failure to deliver the gravel as asked for by plaintiffs, even if plaintiffs had been in a position to handle it; about which, however, the evidence leaves some doubt.

As to the ordering of plaintiffs to return their outfit to the work, that is expressly provided for by the contract (section 51); and the engineer testifies that there was work for the teams to do, his judgment being final in that respect (section 80). It will also

be observed that the equipment ordered back was only half the equipment the contractor should have had on the job.

### III.

[3] Towards the end of the contract, plaintiffs sublet part of it to another contractor, who finished it and was paid therefor by the defendant. About this there is no controversy. But the subcontractor also undertook to do over and finish up some part of the work done by plaintiffs. Plaintiffs admit that this work was worth $400; but the defendant paid $1,016.15, which it has deducted from plaintiffs' pay; and plaintiffs are now asking judgment for the difference, say $616.15.

As there is no evidence in the record as to the amount or value of the work done, plaintiffs' admission that it was worth $400 is the only proof justifying any allowance therefor, and under the circumstances defendant is not justified in holding back out of plaintiffs' pay more than said $400.

### Decree.

The judgment appealed from· is therefore reversed, and it is now ordered that plaintiffs have judgment against defendant for the sum of $616.15, with legal interest from judicial demand and the costs of both courts.

DAWKINS, J., concurs in the decree.