[No. 28579. Department One. April 30, 1942.]

M. L. Ericksen, *Appellant,* v. Edmonds School District No. 15, *Respondent.*[1]

[1]Reported in 125 P. (2d) 275.

*DuPuis & Ferguson* and *Geo. D. Lantz,* for appellant.

*William A. Johnson, Clarence J. Coleman,* and *Leslie R. Cooper,* for respondent.

STEINERT, J.—Plaintiff, a general contractor, brought suit against defendant, a school district, to recover damages alleged to have been sustained by him by reason of defendant's breach of a contract under which plaintiff had been authorized by defendant to construct for it certain additions to its high school building. At the conclusion of plaintiff's evidence, the court, on motion of defendant, dismissed the action with prejudice and entered judgment accordingly. Plaintiff appealed.

In the latter part of October, 1938, the respondent school district advertised for bids for the construction of certain additions to its high school building located in Edmonds, Washington. Appellant was the successful bidder, and on November 9, 1938, he entered into a written contract with respondent for the performance of such work. By express provision, the contract included: (1) the advertisement for bids, (2) a document entitled "Information For Bidders," (3) the accepted proposal, (4) an agreement with a schedule of prices attached, (5) documents setting forth general and special conditions, (6) the specifications, and (7) the plans. We will have occasion a little later to refer in some detail to various portions of some of these documents, but for the present it is sufficient to say that by the terms of the contract appellant agreed to con-

struct the school building additions, in accordance with the plans and specifications and such modifications thereof as should become necessary, for the sum of $177,527, increased or decreased proportionately by any modifications required. He further agreed to complete the construction within two hundred ninety-five consecutive calendar days from the date on which he should receive a start order from the architect, and to allow the owner by way of liquidated damages the sum of ten dollars for each calendar day thereafter that the work should remain uncompleted.

Immediately following the signing of the contract, appellant received from the architect a start order authorizing him to commence the work on the following day, November 10, 1938. Appellant was thus obligated to complete the work on or before August 31, 1939. The work was not completed, however, until November 10, 1939, seventy-one days beyond the agreed time.

The building, as constructed, was finally accepted by respondent on January 5, 1940, and appellant was thereupon paid the balance of the amount owing him under the terms of the contract, less the sum of seven hundred ten dollars which respondent retained as liquidated damages for the excess period of seventy-one days required for the completion of the work. Prior to this settlement, however, appellant had claimed damages in the sum of $40,090.24, alleged to have been caused by respondent's acts hereinafter more specifically related. Respondent rejected the claim and stood upon the terms of the contract. Appellant thereupon commenced this action to recover the above amount, on the theory that the contract had been breached by respondent. Later, by trial amendment, appellant sought also to recover the retained amount of seven hundred ten dollars.

The general ground upon which appellant bases his appeal is that during the whole period of the construction respondent, through its architect who had prepared the plans and specifications and who was in charge of the building operation, "slowed down and retarded the reasonable progress and prompt performance of the work by appellant in its proper order and sequence." The specific claim now made by appellant is that respondent, through its architect, breached the contract in the following respects:

"1. The plans furnished by respondent were erroneous and incomplete as to necessary dimensions and details, which were not timely corrected or supplied by respondent;

"2. The plans were also erroneous and incomplete as to essential starting points for the work, and the work, until they were corrected and supplied, could not be properly commenced, but respondent ordered and required appellant to commence and proceed with the work while the plans were in such condition;

"3. Respondent required appellant to employ too many workmen, more than could be used to advantage on the work, and to work all parts of the building at the same time; and

"4. Respondent interfered with appellant's workmen by directly taking up matters with them and giving them orders, contrary to good building practice."

As an additional ground, it is contended that respondent's acts were unreasonable, arbitrary, and capricious.

Appellant filed in the cause a bill of particulars in which he set forth in detail the manner in which his work had been "hindered, impeded, retarded and obstructed," reciting over three hundred instances of alleged errors and omissions in the architect's plans and specifying the extent to which he had been required to employ additional workmen. Owing to the fact that this action was dismissed by the trial court at the conclusion of appellant's case, we have before

us only the evidence which he adduced. The testimony covers almost twelve hundred pages and substantiates in great degree appellant's claims as to the existence of errors and omissions in the plans. The record includes expert testimony to the effect that the time taken by respondent's architect in supplying the needed corrections was unreasonable, arbitrary, and capricious.

At this point we advert to the contract, which, as stated before, is made up of a series of enumerated documents. The "Information For Bidders" contained this provision:

"INTERPRETATION OF PROPOSED CONTRACT DOCUMENTS —If any person contemplating submitting a bid for the proposed contract is in doubt as to the true meaning of any part of the plans, specifications, or other proposed contract documents, he may submit to the Architect a written request for an interpretation thereof. The person submitting the request will be responsible for its prompt delivery. Any interpretation of the proposed documents will be made only by Addendum duly issued and a copy of such Addendum will be mailed or delivered to each person receiving a set of such documents. The Owner will not be responsible for any other explanations or interpretations of the proposed documents."

The "Proposal" submitted by the appellant contained these recitals:

"That he [appellant] has carefully examined the Contract Documents relating to the work bid on herein and now on file at the office of William Mallis, Architect, Seattle, Washington:

"That he has personally inspected the actual location of the work and all other local conditions affecting it:

"That he submits the proposal subject to the terms and conditions of the above-mentioned Contract Documents: and

"That he has satisfied himself as to the quantities and conditions, and understands that in signing this proposal he waives all right to plead any misunderstanding regarding the same.

"He proposes and agrees:

"That if this bid is accepted he will contract with said Owner [the school district] to provide all necessary machinery, tools, apparatus, and other means of construction; and to do all the work and furnish all the materials specified in the contract, in the manner and time herein prescribed, and according to the requirements of the Architect as therein set forth; and

"That, if awarded the contract, he will commence the work and complete the same within the time limits provided in the Contract Documents."

The "General Conditions," incorporated in the contract, contained these provisions:

"Section 3. CONFORMITY OF PLANS AND SPECIFICATIONS. The work shall be done in strict conformity to the plans and specifications and to the exact lines and grades as fixed by the Architect, and with such instructions as shall from time to time be given by the Architect. . . .

"Section 4. ADDITIONAL INSTRUCTIONS. In the event that it is found that the instructions and drawings contained in the Contract documents are not sufficiently clear to permit the Contractor to proceed with the work, the Architect shall, either upon his own motion or upon request from the Contractor, furnish such additional written instructions, together with such additional drawings as may be necessary. When such request is made by the Contractor, it must be made in ample time to permit the preparation of the instructions and drawings by the Architect before the construction of the work covered by them is undertaken.

"For the purpose of avoiding delays in the preparation of such additional instructions and drawings, the Architect and the Contractor shall jointly prepare a schedule showing the time for the commencement of the work to be included in them and the time the Con-

tractor shall furnish the necessary shop drawings, which may be necessary for their preparation. The Contractor shall do no work without proper drawings or instructions and shall at his own expense replace any work wrongly executed.

"Section 15—CHANGES IN PLANS OR QUANTITIES. The Owner shall have a right to make any reasonable change in the plans or quantities upon the recommendation of the Architect that may be hereafter determined upon as necessary or expedient either before or after the beginning of the work by defining them in writing, and in case such alterations on unit price contracts increase or diminish the approximate quantities as stated in the schedule, then the Contractor shall be paid for the work actually done at the contract price that is specified in the Proposal, and such alterations shall not constitute a claim for damages nor shall any claim be made on account of anticipated profits on the work that may be altered or dispensed with.

"Section 18—FAILURE TO PROSECUTE WORK VIGOROUSLY. Failure of Contractor to furnish sufficient force, equipment, and material in time to insure the completion of the work within the time specified herein shall be deemed a violation of the contract.

"Section 21—ORDER OF EXECUTING WORK. The Contractor shall commence work at such point or points as the Architect may direct and shall conform to his directions as to the time and order in which various parts of the work shall be done."

Section 2 of the "Special Conditions" provided, in part, as follows:

"CHANGES AND EXTRAS— . . . . Nor shall any change, correction, alteration, addition, omission, or variation from the plans or specifications be considered as an extra unless the Contractor or his representative on the work notified the Architect at the time of receiving notice from the Architect or the Owner to make such change that he demanded extra pay for same. His neglect to so notify the Architect or Owner that he demanded extra pay for same shall be a waiver of any or all of his right to collect extra pay for same and

shall mean that no extra expense was incurred in the execution of said change. . . ."

Appellant testified that he had read the foregoing provisions and understood them. He also testified that, after examining the plans at the time of starting work, he had prepared a progress chart or schedule but had never turned it over to the architect, because it was wholly guess work. He further testified that during the course of the construction he saw the architect twenty-five times, or more, both at the building and in the latter's office in Seattle; that upon those occasions the relations between them were entirely friendly; and that they never criticized each other. It is conceded by appellant that errors and omissions in plans as they come from the drafting room are not unusual, and his expert witnesses testified that the existence of such errors and omissions does not indicate arbitrariness but merely a common human frailty.

Finally, we quote § 28 of the "General Conditions," the provisions of which constitute the basis of the present controversy:

"CLAIMS FOR DAMAGES AND EXTENSIONS OF TIME. The Contractor shall not be entitled to any claim for damages on account of hindrances or delays from any cause whatsoever, but if occasioned by any act of God, or by any act or omission on the part of the Owner, such act, hindrance, or delay may entitle the Contractor to an extension of time in which to complete the work which shall be determined by the Architect, provided that the Contractor will give notice in writing of the cause of such act, hindrance, or delay within ten days (10 days) after its occurrence."

It will be observed that this provision declares (1) that the contractor shall not be entitled to damages on account of hindrances or delays *from any cause whatsoever,* but (2) that he may be entitled to an extension of time in case of acts or omissions by the owner caus-

ing such delay, provided (3) that he, the contractor, gives written notice of the cause of the hindrance or delay within ten days after its occurrence.

The decisive question in this case, therefore, is whether, under a contract containing such a provision, the contractor should nevertheless be permitted to maintain an action against the owner for breach of contract, upon a showing that the work was retarded and rendered more difficult and expensive because of failure on the part of the supervising architect to make necessary corrections in the plans and specifications in a timely manner; or whether, on the contrary, the contractor's sole remedy is to seek an extension of time for the completion of the work, subject to the conditions with respect to notice specified in the contract.

Appellant testified that he had read § 28 and that he understood it. He also testified that, while he had on several occasions requested additional time, in only two instances had he made such requests *in writing*. On August 7, 1939, which was less than one month prior to the time when the work was supposed to be completed, he made a written request for forty-five days' additional time. In that request, however, appellant made no complaint of any delay or hindrance caused by the respondent or its architect, but merely assigned as grounds therefor

". . . several unforeseen incidents that developed during construction and over which I [appellant] had no control, such as: Shortage of labor in the lathing, plastering, sheet metal and bricklaying trades; also extra work in the remodeling of the old building, such as: Installation of new lintels over windows, rebuilding brick piers at windows, installing new piers under posts supporting corridors, etc."

It may be noted that appellant makes no claim in this action with respect to the "extra work" here mentioned.

In a letter dated December 1, 1939, three weeks after the work was actually completed, appellant requested an extension of seventy-one days' time to cover the period from September 1, 1939, on which date the work should already have been completed, to November 10, 1939, the date of actual completion thereof. This second request likewise made no reference to any claim of delay or hindrance on the part of the respondent or its architect, but was based merely on "change of orders" and on the further statement that

"In addition to these changes considerable delay was encountered by waiting for plumbers' roughing in. Also delay was caused by unsettled weather when placing concrete slabs in Auditorium and balcony, there being no roof over the building at the time."

With reference to the changes here mentioned, appellant, again, makes no claim in this action.

When interrogated as to his reason for not basing these requests upon the ground which he now asserts, appellant answered that he knew that if he gave the real reason he would not be granted any extension of time. In a letter addressed to respondent on January 3, 1940, he for the first time made the claims now urged in this action.

We have been concerned thus far with the factual situation presented in the case. Before considering the legal questions raised thereby, we wish to allude briefly to a deficiency in the appellant's brief. In the statement of the case contained therein, appellant's counsel make frequent reference to the abstract of record, but they do not give the corresponding references to the full statement of facts. Rule XVI of the Supreme Court, 193 Wash. 23-a, requires that references to both shall be given. As stated before, the statement of facts in this case comprises nearly twelve hundred pages, and it has required considerable time

to locate the testimony to which appellant's counsel direct our attention in their brief. We mention this matter merely for the purpose of suggesting to the members of the bar generally that compliance with our rules is important.

We now proceed to the merits of the case. In seeking recovery for damages, appellant invokes the oft-repeated rule that, where a contractor is required to build in accordance with plans and specifications furnished by the owner, the latter impliedly guarantees that the plans are workable and sufficient. *Huetter v. Warehouse & Realty Co.*, 81 Wash. 331, 142 Pac. 675, L. R. A. 1915C, 671; *McConnell v. Gordon Const. Co.*, 105 Wash. 659, 178 Pac. 823. Accord, *United Iron Works v. Wagner*, 89 Wash. 293, 154 Pac. 460.

The rule thus announced does not, however, determine the issues in this case, for here the precise question is not whether the plans and specifications as first drafted were capable of being translated into a completed structure according to the contemplation of the parties to the contract, but rather whether the delays and hindrances caused by the architect's slowness in supplying omissions and correcting errors in the plans gave rise, under the terms of the contract, to an action by appellant for damages, or merely entitled him to an extension of time upon proper notice.

It is undoubtedly the rule in this state, as well as in other states generally, that, in the absence of any provision in the contract to the contrary, a building or construction contractor who has been delayed in the performance of his contract may recover from the owner of the building damages for such delay if caused by the default of the owner. *Byrne v. Bellingham Consolidated School Dist. No. 301*, 7 Wn. (2d) 20, 32, 108 P. (2d) 791, 796. See note (1938) 115 A. L. R. 65, 66, in which are collected a great number of cases

supporting this rule, including *Hetherington-Berner Co. v. Spokane,* 75 Wash. 660, 135 Pac. 484. The rule rests on what is generally held to be the owner's implied obligation to keep the work of construction in such a state of forwardness as will enable the contractor to complete his contract within the specified time.

Where, however, the contract expressly precludes the recovery of damages by the contractor for delay caused by the default of the owner, that provision will be given full effect. *Wells Brothers Co. v. United States,* 254 U. S. 83, 65 L. Ed. 148, 41 S. Ct. 34; *Wood v. United States,* 258 U. S. 120, 66 L. Ed. 495, 42 S. Ct. 209; *Orlando v. Murphy* (C. C. A. 5th), 84 F. (2d) 531, writ of certiorari denied, 299 U. S. 580, 81 L. Ed. 427, 57 S. Ct. 45; *Merchants' Loan & Trust Co. v. United States,* 40 Ct. Cl. 117; *Poole Engineering & Machine Co. v. United States,* 57 Ct. Cl. 232, 63 Ct. Cl. 234; *John N. Knauff Co., Inc. v. United States,* 78 Ct. Cl. 423; *J. Devereux O'Reilly & Co. v. Police Jury of St. Tammany Parish,* 154 La. 57, 97 So. 296; *Christhilf v. Baltimore,* 152 Md. 204, 136 Atl. 527; *Allen v. Melrose,* 184 Mass. 1, 67 N. E. 1060; *Charles I. Hosmer, Inc. v. Commonwealth,* 302 Mass. 495, 19 N. E. (2d) 800; *Manerud v. City of Eugene,* 62 Ore. 196, 124 Pac. 662; *First Savings & Trust Co. v. Milwaukee County,* 158 Wis. 207, 148 N. W. 22, 1093; *Nelson v. Eau Claire,* 175 Wis. 387, 185 N. W. 168; *Mayes v. Regina,* 23 Can. S. C. 454. Accord, *Dietrich v. Seattle,* 95 Wash. 654, 164 Pac. 251; *Walter R. Cliffe Co. v. Du Pont Engineering Co.* (D. Del.), 298 Fed. 649; *Underground Const. Co. v. Sanitary Dist. of Chicago,* 367 Ill. 360, 11 N. E. (2d) 361, 115 A. L. R. 57. This rule is also recognized in the *Byrne* case, *supra.*

The language of such preclusive provisions is, however, usually given a strict construction because of the

harsh results which may flow from the enforcement thereof. But when it is clear that a given result comes within the terms of such a provision, the mere fact that the result is a harsh one will not prevent the application of the rule. Whether a given contract provision precludes the recovery of damages in accordance with the rule just announced depends upon the particular language in which it is cast, the nature of the default involved, and the various other circumstances of the case.

The specific provision here in question states positively that the contractor shall not be entitled to any claim for damages on account of hindrances or delays *from any cause whatsoever.* This statement is then given further emphasis, in the contract, by a stipulation that, if such hindrances or delays are occasioned by any act or omission on the part of the owner himself, additional time for the completion of the work will be allowed, provided always that the contractor shall have given notice in writing of the cause of the hindrance or delay alleged to be the result of the owner's conduct. Appellant, in this instance, did not give the notice entitling him even to an extension of time. But wholly aside from his failure in that respect, he was in any event precluded by the express terms of his contract from maintaining an action for damages resulting from hindrances and delays.

The law in this state upon the subject under consideration was definitely established many years ago in the case of *Goss v. Northern Pacific Hospital Ass'n,* 50 Wash. 236, 96 Pac. 1078. In that case, the plaintiff contracted to construct a hospital for the defendant. The work of installing the plumbing and the heating plant was let to a third party under a separate con-

tract. Plaintiff's contract contained the following provision:

"Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architects, or of any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake or cyclone, or by the abandonment of the work by the employees through no default of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; but no such allowance shall be made unless a claim therefor is presented in writing to the architects, within twenty-four hours of the occurrence of such delay."

The plumbing contractor did not put in the plumbing nor install the heating plant at the time the building was ready to receive them, thereby delaying the plaintiff in the performance of his contract. The plaintiff brought suit against the owner of the building to recover damages for the delay. The trial court withdrew the question from the jury, because of the above quoted clause in the contract, and this court affirmed that disposition of the matter in the following words:

"For conditions which arise in the execution of a contract and for which the contract itself makes no provision, the courts are at liberty to apply the ordinary legal remedies when these conditions become a subject of controversy between the contractors; but where the probability of the happening of the condition has been foreseen and a remedy is provided for its happening, the presumption is that the parties intended the prescribed remedy as the sole remedy for the condition, and this presumption is controlling where there is nothing in the contract itself or in the conditions surrounding its execution that necessitates a different conclusion. So in this case, since the parties foresaw that the appellant might be delayed in the

execution of his part of the work by the failure of the party having the contract for the plumbing and heating plant to perform its work on time, and provided in the contract that the remedy therefor should be an extension of time on his part to perform the work, the presumption arises that this was intended to measure the rights of the contractor thereunder. Is there anything in the contract itself, or in the circumstances surrounding it, that precludes the idea that it was so intended? We see nothing that works against the conclusiveness of the presumption. The contract was an ordinary building contract, in which the parties undertook to put in writing all of their rights and liabilities thereunder. It provided for every condition that could arise in its execution, leaving nothing to surmise or inference, and we think it must be held to contain the entire agreement."

That language might, in substance, be applied to this case. The probability of the occurrence of delays was clearly foreseen by the parties to this action, as the language of the contract repeatedly discloses, and they specifically provided that the contractor's remedy therefor should take the form of an extension of time. The presumption therefore is that the parties intended such an extension of time to be the sole remedy for delays encountered in the performance of the contract. Furthermore, there is nothing in the contract or in the conditions surrounding its execution that necessitates a different conclusion. It was an ordinary building contract in which the parties undertook to put in writing all of their rights and liabilities. It provided for every condition that could arise in its execution, leaving nothing to surmise or inference. In fact, the provision under consideration in this case is stronger and more preclusive than the corresponding provision in the *Goss* case. In that case, the result depended upon the indulgence of a presumption that the parties intended the prescribed remedy to be the sole remedy,

while here the contract specifically provided that the contractor should not be entitled to any claim for damages on account of hindrances or delays *from any cause whatsoever*.

The case of *Byrne v. Bellingham Consolidated School Dist. No. 301, supra,* decided in 1941, affirmed the principles stated in the *Goss* case, but arrived at a different result solely because the contract in the *Byrne* case contained a specific clause providing for reimbursement of the contractor for damage sustained by him by reason of the wrongful act or neglect of the owner or of anyone employed by him. The contract in the *Goss* case, like that in this case, contained no such clause.

Even if there were no controlling authority on the subject in this state, we would have no hesitancy in declaring that the very terms of the contract itself preclude appellant's present action for damages for the hindrances and delays allegedly caused by respondent. That conclusion is made doubly certain by our previous decisions heretofore discussed.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.