WeldoN, J.,
delivered the opinion of the court:
In the year 1898 the United States built a number of shacks, mess halls, stables, and hospitals near the town of Anniston, in the county of Calhoun, State of Alabama, on land belonging to different individuals, and after the close of the war, to wit, in March, 1899, the buildings were sold at public auction by the depot quartermaster of the United States to the claimant and Thomas L. Houser for the sum of $1,385. Said Plouser died on the 17th of April, 1901. At the time of sale the quartermaster announced to the public that the party purchasing the buildings would be put in immediate possession of the property and could remove the same at any time prior to the 15th of April, 1899. On the next day after the purchase the claimant proceeded to pull down and remove the buildings purchased as aforesaid. At the time of the purchase a part of the land ivas owned by E. F. Sawyer, and at the time the United States took possession another portion of the land was owned by W. J. Edmundson, who, on the 21st of March, 1899, sold it to John P. Leyden. After the sale, and before the 15th of April,. 1899, Sawyer sold the land to D. K. Owen.
*521 Before the 15th of April, 1899, and before the removal of the buildings, Edmundson notified claimant that he had sold the land to Leyden, and in the name of Leyden notified claimant not to remove the buildings, of which the quartermaster was notified, who sent men from his office and put claimant in possession, with instructions to claimant to remove the buildings.
The claimant removed the buildings on the Yth of April. He was notified on the 12th of April, 1899, not to remove the buildings from the land sold by Sawyer to D. K. Owen; but at that time the quartermaster having removed from the post no notice was given to him as to the claim of. Owen. At the time of sale the purchasers did not know on whose lands the buildings were located, nor what arrangements there were between the United States and the owners; but relied solely upon the rejoresentations of the quartermaster and auctioneer as to right of removal and the obligation of the United States to put the purchaser in possession.
After the removal of the buildings by the claimant Owen brought suit in the Circuit Court of Calhoun County, Ala., in trespass, and recovered a judgment against the claimant for the sum of - $150 and cost of suit. Leyden also brought a suit in the same court, claiming a larger damage than was claimed in the Owen suit, and after the trial of the Owen suit the claimant settled the claim of Leyden for the sum of $125. The district attorney of the United States was notified by the counsel of the claimant of the pendency of the suit of Owen, with a full statement of the facts, and the xlttorney-General of the United States was advised by the district attorney of the pendency and character of the proceedings.
The findings disclose the fact that the district attorney of the United States was fully advised in the premises as to what the issues were, when the case would probably be tried, and every .reasonable opportunity given him to assist in the defense of the title of the claimant. No effort was made upon the part of the defendants to furnish the claimant with any evidence of the right of the United States to remove the buildings, although the proper officer of the *522 United States was specially requested to assist in that very essential particular.
The settlement of the Leyden case was made by the advice of counsel after the trial of the Owen case before a jury in a court of competent jurisdiction.
The suits in the Circuit Court of the State were actions of trespass, and the gravamen, as will be seen by the allegations of the complainant, was the destruction and removal of the buildings, there being no alleged trespass to the land beyond the mere removal of the property, which was purchased by the claimant from the United States, with an express asseveration of the title of the United States and their right to move the same. The purchase was a joint purchase by Charles J. Houser and Thomas L. Houser, who died in 1901, but the suits in which the claimant was required to pay were against the claimant alone and he alone paid the amounts of the judgments.
The proceeding legally stated is to recover the sum of the two judgments and costs rendered against the claimant because of the failure of title to the buildings sold by the United States, and the further failure of the United States to defend the title when assailed by the suits in the court of Alabama after being properly notified of the pendency of such suits. It is contended on the part of the defendants that they are not bound by the alleged agreement or guaranty by the quartermaster, for the reason that it is not shown that he was empowered to make such a guaranty, and hence it is not binding on the United States; that the representations were ultra vires and no responsibility attaches.
It is a general principle sustained by many authorities, that the officers of the United States in their official capacity are special agents acting within legally prescribed limitations, that beyond those limitations no responsibility attaches to their acts as against the Government; and where an officer acts in subordination to the authority of a superior officer he has no discretion to bind the United States beyond the limits of his delegated powers. (Ferris v. United States, 28 C. Cls. R., 332; McElrath v. United States, 12 C. Cls. R., 201; Hume v. United States, U. S. R.., 406; United States v. Barlow, 132 *523 U. S. R., 271.) But tlie question is, Do the facts of this case 'bring it within the legal effect and theory of those cases ?
The depot quartermaster,while subordinate to the general jurisdiction and control of the Quartermaster-General, is he not the general agent of the defendants in the purchase of all necessary supplies for the Army, and the incident right when directed so to do, to sell the refuse and unnecessary supplies not needed for the use of the Army ? That the depot quartermaster was authorized to sell the property as he did is shown by the fact that the proceeds of the sale was paid into the Treasury of the United States, and the only ground assigned for the nonpayment of the claim by the Quartermaster-General is that thei'e is no appropriation from which the amount can be reimbursed to the claimant.
That condition brings the discussion of the question of liability to the inquiry, whether the depot quartermaster had the right and .did warrant the title which was attempted to be transferred to the purchasers.
The property was sold as the property of the United States bjT an authorized agent of the United States at public sale, and before any bidding took place it was announced in the presence of the quartermaster that the party who purchased the buildings would be put into possession immediately, and could remove the buildings any time before the 15th of April, 1899.
After a notice to the claimant of an adverse title on the part of one of the owners of a part of the land on which the houses were situated, the claimant was put into absolute possession of a part of the property by a detail of soldiers ordered by the military authorities. As a matter of fact, the claimant took possession of all the property and removed the same before the time limited by the terms of the sale.
Tt may be fairly assumed from the facts and circumstances of this case, and the kind and condition of the property that it, and that being true, a different state of law arises on the question of the implied warranty of title than if the defendants were not in possession.
It is a general rule that in the sale of property no implied warranty of quality or goodness arises from the fact of the sale, but not so with the matter of title. If the seller is in *524 possession, by the weight of the American authorities, there is an implied warranty of title, and the seller becomes liable upon a failure of title. (Deatz & Sterling, 38 C. Cls. R., 355; Thurston v. Spratt, 52 Mo., 202; William v. Sammons, 34 Ala., 691; Burt v. Duvay, 40 N. Y. (1 Hand), 283; Linton v. Porter; 31 Ill., 307.) Where goods are not in the possession of the seller a different rule prevails as to an implied warranty.
The court’s attention is called to the case of Brandt v. United States (5 C. Cls. R., 313), in which it is said:
“ The sale having been conducted under authority of the Government, and the bonds fair on their face, in the possession of its lawful agents, an implied warranty of title results, which the claimant has the right to insist on in this- court. He bought in good faith and without notice of the inherent defects in the bonds, but as it turns out he took nothing by his purchase. His money is wrongfully in the treasury, and an implied contract results, in the nature of a contract for money had and received; whereby he can, on the plainest principles of common justice, maintain this action to recover it back.”
And also Atlantic Dredging Company v. U. S., 35 C. Cls. R., 463; Bishop's Contracts, enl. ed., sec. 243.
If it should be conceded, that the United States were not in the actual and absolute possession of the buildings at the time of sale, the assurance of the quartermaster, that the purchaser would have the right of entry until the 15th of April, 1899, was such an assurance as amounted to a warranty that up to that time the United States had good right and authority to convey a title to the property. The officer acting in behalf of the United States acted in good faith in the matter; he thought thé United States had a right to remove the buildings within a certain time, and upon the faith of that belief he assured the public that the purchaser would have sufficient time to remove the same; and for the purpose of giving his principal the benefit of that condition, the announcement was made of the right of removal. If it had been understood otherwise, no sale probably could have been made. The defendants have profited by the assurance of the right of removal, have failed and refused to defend the title of the *525 claimant, liave received the -benefit of that assurance, and still retain it to the prejudice of the claimant.
Considering the circumstances under which the sale was made, and the character of the property, the court is of the opinion that there was an implied warranty of title, but aside from that consideration the findings show that there was an express assurance that the claimant should have the right to remove the property within a certain time which in itself amounted in law to an express warranty of title on the part of the United States, and the property having been removed within the limitation of time, there was no fault on the part of the purchaser to vitiate the legal effect of that assurance.
The question of the right of the claimant to recover reasonable attorneys’ fees is one of the contentions of the case, the defendants denying that right.
It was the duty of the claimant to defend the title of the property in order to protect himself and the collateral obligation of the defendants, and the employment of competent counsel to assist in the defense was one of the obvious and necessary ways to discharge that duty.
Mr. Sutherland in his work on the subject of damages cites a very large number of cases of many of the States and England, and from them deduces the following as the result:
“ On principle, and the weight of authority, where the prosecution or defense of suits is rendered necessary, naturally and proximately, by a breach of contract or any wrongful act, the costs of that litigation, reasonably and judiciously conducted, incurred or paid, including reasonable counsel fees, are recoverable as part of the damages.” (1 Sutherland Damages, 142.)
“ Where there is an implied or express indemnity which •covers the consequences of being sued and having to defend an action, all the usual concomitants of such a situation are necessarily within the contemplation of the parties, and if there is no objection of improvidence or bad faith, the expense of •counsel is obviously as proper to be allowed as that of witnesses or the services of the clerk of the court or the sheriff.” (1 Sutherland Damages, 139.)
“ So a party who sells property with express or implied warranty of title is liable for the costs of a successful action,, as well as damages recovered therein, against his vendee, by *526 which such title is overthrown, .and the vendee dispossessed or compelled to pay for the property to another person.” (1 Sutherland, 140.)
There is a difference in the claim made by the plaintiff in the Owen and Leyden case. In the latter case no notice was served on the district attorney of the United States or any other responsible agent or officer of the Government, the correspondence and notice being confined to the bringing and pending of the Owen case, and notwithstanding the authorities of the United States did not attempt to assist in the Owen case, it does not follow that they might not have assisted in the defense of the Leyden case.
The judgment in the Owen case is binding on the defendants in that case because they had notice of the suit, but in the Leyden case no notice having been given the United States are not estopped by the judgment; and there being no judgment in that case establishing a liability on the defendants, consequently no allowance can be made in this proceeding.
Judgment will be entered for $206.70, as shown in the conclusions of law.