BaeNey, Judge,
delivered the opinion of the court:
This is a suit upon a contract for the construction of a pile and timber pier at the navy yard, Charleston, S. C. The contract was entered into November 30, 1907, and with the plans and specifications therein referred to is made a part of the petition. A contract had previously been entered into by the defendants with the North American Dredging Co. for dredging out the site to be occupied by the pier which the claimant was to construct; and this dredging work was to be completed by January 31, 1908. The claimant at the time he made his contract knew of this contract for dredging and its terms.
The contract provided that the work thereunder should begin at once and be completed within five months after the site should be turned over to the contractor. It appears by the findings that it was practicable for the contractor to do at or near the immediate site of the pier considerable of the work contemplated in the contract before the immediate site was turned over to him, such as making the concrete tiles, bolting together timbers, etc. For this purpose the claimant sent his plant to the navy yard about January 1, 1908, no instructions to postpone operations having been received by him, and after the erection of his equipment began this preliminary work. By the end of March all of this preliminary work which it was practicable to do had been completed and *282 the claimant was ready to drive the piles and to do all the completing work upon the pier; but the necessary dredging work to be done before this work could begin had not been done. In fact, the site of the pier was not turned over to the claimant until May 16, 1908, thus delaying the claimant for more than six weeks; and it is for damages for this delay that this suit is brought.
After the completion of his contract the claimant addressed a letter to the Chief of the Bureau of Yards and Docks requesting reimbursement for $3,500, a loss claimed to have been suffered by him by reason of this delay, and thereafter a board of officers was, by approval of the Secretary of the Navy, appointed and convened for the purpose of ascertaining the facts in relation thereto, and this board estimated the damage by reason of such delay to the claimant to be $2,665.97. This sum was never paid to the claimant, the comptroller deciding that it being a claim for unliquidated damages for breach of contract the accounting officers were not authorized to settle it. It will thus be seen that there appears to be no dispute in this case as to the amount of the claim, and the only question for decision is whether the defendants are liable for anything.
Where a contractor is delayed to his injury in the performance of a contract by a breach of contract by the owner, the rule is, of course, elementary that the latter must respond in damages.
It is contended, however, by the defendants that the delay in this case having been caused by the misconduct of another contractor, they are not liable. We know of no authority or reason for such a contention. The defendants were under a reciprocal obligation with the claimant to properly prepare the site where he was to build the pier which he had obligated himself to construct. Like nearly all of the work done by the defendants, this preparatory work was to be done by another contractor, but in a legal view and so far as the contractual relation between the claimant and the defendant is concerned, this work was to be done by the latter. If the dredging company failed to perform its contract in time to the damage of the claimant, the latter had no recourse against it because there was no privity of contract between *283 them. It was the defendants and not the dredging company who were under legal obligations to the claimant to prepare the site.
The defendants had protected themselves from damage on account of this delay by the dredging company by a provision in their contract with it for liquidated damages for such delay; and the findings show that under this contract they received by way of such liquidated damages, from the dredging company, a sum much larger in amount than the admitted damage to the claimant.
The case of Cotton v. United States, 38 C. Cls., 536, is almost identical with this. In that case the damage to the claimant was caused by the failure of another contractor with the defendants to make a timely preparation of the site where the work contracted to be done was to be performed, and the court laid down the rule that where a contractor with the Government sustains damage caused by the unreasonable delay of another contractor of the defendants to do the work necessarily preliminary to the work of the former, he is entitled to recover of the Government. In that case, as in the one at bar, the Government had received a large sum in liquidated damages from the delinquent contractor. This doctrine seems to be founded in reason, and the defendants have not cited us to any case holding to the contrary.
The defendants contend, however, that the contract in this case precludes a recovery by the claimant for damages caused by the delay of another contractor. The first provision of the contract thus depended upon is found in paragraph 13 of the specifications, but for an understanding of this provision both paragraphs 12 and 13 must be examined. They are as follows:
“ 12. Damages for delay. — In case the work is not completed within the time specified in paragraph 9, or the time allowed by the Chief of the Bureau of Yards and Docks under paragraph 10 of this specification, it is distinctly understood and agreed that deductions at the rate of $20 per day shall be made from the contract price as liquidated damages, and not as penalty, for each and every calendar day after and exclusive of the date within which completion was required, up to and including the date of completion and acceptance of the work, said sum being specifically agreed *284 upon in advance as the measure of damage to the United States by reason of delay in the completion of the work; and the contractor agrees and consents that the contract price, reduced by the aggregate of damages so deducted, shall be accepted in full satisfaction for all work done under the contract.
“ 13. Unavoidable delays. — Unavoidable delays are such as result from causes which are undoubtedly, or may reasonably be presumed to be, beyond the control of the contractor, such as acts of Providence, unusual storms, fires (not the result of negligence), fortuitous events, inevitable accidents, etc. Delays caused by acts of the United States will also be regarded as unavoidable delays.”
❖ * * ❖ # í|C ífc
The defendants select the following clause from paragraph 13 as sustaining their contention: “ Delays caused by acts of the United States will also be regarded as unavoidable delays.” Standing alone this clause might be so interpreted, but construed with what precedes it in both paragraphs 12 and 13 it clearly has no such meaning. The “ unavoidable delays” mentioned are unavoidable as to the claimant and not the defendants. In other words, if the United States delayed the contractor, such delay was not to •be charged against him in the computation of the liquidated damages provided for in paragraph 12.
The last clause of paragraph 30 is also cited by the defendants as sustaining their contention. The whole paragraph is as follows:
“30. Worh to be done by the Government. — The Government will furnish all the necessary rail for railroad track, together with splice bars, track bolts, frog, spikes, , and steel for bumpers, but the contractor shall put the track and bumpers in place according to the plans and specification. The Government will furnish also all the bollards and bitts shown on the plans, together with the holding-down bolts, but the contractor shall put them in place, as shown on plans. The contractor will be required to carry on his work without interfering with the ordinary use of the streets or with the operations of other contractors or delaying or hindering any work done by the Government, whether upon the site or not. He shall make good any damage to Government property caused by his operations. It is understood and agreed that the Government and the contractor will, so far as pos *285 sible, labor to mutual advantage where their several works in the above-mentioned or in unforeseen instances touch upon or interfere with each other. Mutual concessions under the direction of the officer in charge shall be made to secure this end. It is also further understood and agreed that from any such necessary interference, whether resulting in delay or additional expense or not, no claim for extra compensation shall arise, the contract price covering all contingencies of every kind, except for changes provided for in paragraph IT of this specification.”
Taking the whole paragraph together it clearly has no reference to delays caused by other contractors. It simply provides for reciprocal concessions to one another in the conduct of the work, when both the claimant and the defendants are working at the same time. All unnecessary interference by either party was to be avoided, and only in case of unnecessary interference by the defendants was the claimant to have any relief. It provides for the mutuality of the work to be done by the claimant and the defendants and nothing more.
It follows from the foregoing that the claimant should have judgment in the sum of $2,665.9T, and it is so ordered.