LittletoN, Judge,
delivered the opinion:
In this suit plaintiff seeks to recover from the defendant his actual loss and damages sustained because of failure of the defendant to deliver title and to put him in possession of certain improvements constructed by the defendant upon leased premises for the wrecking and removal of which, and for the restoration of the premises, the plaintiff and the de *435 fendant entered into a contract, and because of misrepresentation of the defendant’s authorized officers as to the accessibility of the improvements.
The contract in question was a “ Contract for the Construction and- Repair of Public Works, Including Vessels.” The United States had constructed an Army cantonment known as Camp Kearney upon leased premises in the State of California, including buildings, waterworks, sewer system, telegraph and telephone lines, lighting system, roads, and railways. The use of the premises as an Army cantonment had been abandoned and the United States advertised for bids for the letting of a contract for the removal of all of these improvements and for the restoration of the premises to a condition satisfactory to the defendant. The United States was bound to restore the premises as far as possible, and the plaintiff was the successful bidder and was awarded the contract to do the work. The subject matter of the contract was the wrecking and removal of the improvements, the restoration of the premises, and the sale of the salvaged material. Inasmuch as the right to keep and dispose of the salvaged materials that might be removed from the premises was more valuable than the cost of the wrecking and removal thereof and the restoration of the premises, the plaintiff agreed to pay the defendant $25,515 for the privilege of doing the work and retaining the salvaged material. Plaintiff was experienced in work of this kind and estimated the probable expense of doing the work and the amount which he could probably realize from the salvaged material. The contract required that the work be completed within ninety days after the execution of the contract.
Under the contract the United States warranted that it was the owner and entitled to possession and the right to remove the improvements upon the premises in question. The defendant, through its authorized officers, represented to bidders that the successful bidder would be given free access to the premises and would be placed in the possession of the improvements. As a matter of fact, however, at the time the advertisement and call for bids was made, and contin *436 uously thereafter until the execution of the contract, the defendant had actual notice, verbally and in writing, from the Mack Copper Company and its officers and representatives, upon whose land a portion of the improvements were located, that the title of the United States to the improvements and its right to enter upon the land and remove the same was disputed and denied, and that the said Mack Copper Company and its officers would refuse to permit the United States or anyone with whom it might make a contract to enter upon the premises or to remove the improvements therefrom. This information was concealed by the defendant from bidders and from the plaintiff at the time it made its bid and at the time the contract was entered into. These facts establish that there was a direct misrepresentation by the defendant of the conditions under which the work was to be performed. Hollerbach v. United States, 233 U. S. 165; United States v. Atlantic Dredging Co., 253 U. S. 1. This suit is not an action sounding in tort. The representation that the improvements were accessible and that the contractor would have free ingress and egress was the very foundation of the whole undertaking. The plaintiff did not pay the defendant $25,575 for a lawsuit. He paid for the right to remove the improvements. The United States particularly contracted to deliver possession, which it did not do until February, 1925, over two years after the contract was entered into. It was then enabled to do so only as a result of a decree of the United States District Court for the Southern District of California terminating a suit instituted against the Mack Copper Company and others which extended over a period from August, 1923, to February, 1925. When the Mack Copper Company and its officers and its representatives by the use of arms prevented the plaintiff and also the defendant from entering upon its property for the purpose of wrecking and removing the improvements the Quartermaster General and the Judge Advocate General of the Army, the Secretary of War, and the Attorney General of the United States all decided that the defendant had not delivered title and possession of the improvements to the plaintiff and that it had not performed its obligation *437 under the contract in providing the plaintiff free access to the premises for the purpose of performing the work required by the contract.
By specific direction of the Attorney General, the United States attorney for the southern district of California instituted a suit in the name of the United States in the District Court, Southern District of California, for an injunction against the Mack Copper Company and for damages. The basis of that suit was that the United States was the owner of the improvements and was entitled to possession thereof and the right to remove the same. This was denied by the Mack Copper Company and others and the issue thus joined was tried out. The Mack Copper Company contended that the United States had sold whatever right it had to Weiss-baum and that he was the proper plaintiff. The court decided, after a full and complete hearing, that the United States was the owner and entitled to possession of all of the improvements and equipment erected and installed by it in and upon said land of the Mack Copper Company, and that it had the right to remove, or cause to be removed off the premises, all of the improvements on said lands and premises, and decreed that the United States recover from the Mack Copper Company all damages arising by reason of their wrongful interference with the removal of said improvements and for the full value of all those improvements that were sold by the United States to the plaintiff and thereafter sold, missing, or removed from the premises by persons other than the plaintiff.
The matter was referred to a special master to take proof as to the damages. Upon appeal by the Mack Copper Company to the United States Circuit Court of Appeals for the Ninth Circuit, the decree of the district court was affirmed. Final judgment was entered by the district court in favor of the United States for $33,781.88 representing the value of the improvements removed from the premises by the Mack Copper Company and for interest of $822.79 upon that amount.
Upon entry of the decree of the court the defendant notified the plaintiff that it was then ready to deliver the balance *438 •of the improvements and demanded of the plaintiff that it proceed with the performance of the contract. In these circumstances it may not be said that the defendant is in nowise responsible to the plaintiff for his actual losses sustained by reason of the failure of the defendant to place him in possession of the improvements and to give him the right and uninterrupted privilege of removing the same.
No amount was included in the judgment of the district court for the actual expenses and damages sustained by the plaintiff, inasmuch as no amount on account thereof had been paid by the United States.
Counsel for the defendant in this case relies upon the second clause of paragraph 4 (Q,) of the specifications as a defense to the plaintiff’s right to recover his actual damages and insists that under this provision title and possession of the improvements passed to the plaintiff upon the «execution of the contract and that under the decision in the case of Tyrrell v. United States, 60 C. Cls. 753, the plaintiff may not recover from the defendant his actual loss. In the circumstances of this case we think this contention is without merit. The paragraph of the specifications referred to provided that “All loss or damage to the property purchased, by fire, water, storm, theft, or otherwise, shall be immediately assumed by all purchasers, and the United States shall be in no way or manner liable therefor. Possession of and title to the property sold shall immediately pass to the purchasers on payment of the purchase price and execution of the contract of sale.” This specification must be read in the light of existing conditions and must be construed in the light of the subject matter of the contract. We deem is unnecessary to consider sporadic cases of sales of personalty cited in defendant’s brief other than to point out that they state elementary rules relating to passage of title and possession of personalty. None of the cases is similar to the situation here involved. They are all cases of personal property not affixed to realty and present none of the problems of this case and involve no similar conduct on the part of the seller. In the nature of things, it is impossible for title or possession of things affixed to the realty to pass by such a statement as *439 is contained in the clause above quoted. The record is replete with a description of these improvements. They were all affixed to the realty so as to form an integral part thereof. The Mack Copper Company claimed ownership on that basis. All that the United 'States could have was a right to remove, an easement. If it failed to remove in a reasonable time, the title remained in the fee holder. There is no transfer of title by such failure to remove. It is simply a forfeiture of the right to remove the improvements. Cases are found where language is rather loosely used to the effect that the fixtures subject to removal remain personalty as between the landlord and tenant. But a failure to remove does not convert personalty to realty. The clause of the specifications referred to can only mean that the purchaser should immediately have the right to go on the land and remove these improvements, sever them from the realty, and take possession, and that means only that the United States agreed to put the plaintiff in possession. The United States failed to put the plaintiff in possession and thereby breached the contract and is liable for the expenses and the losses suffered by the plaintiff in consequence of that failure. That it failed to put plaintiff in possession is further established by the fact that more than a year after the contract had been executed the United States went into court and established that it was the owner of and entitled to possession of the improvements. The position taken in this case by counsel for defendant that plaintiff may not recover any amount in excess of the judgment in favor of the United States in the District Court for the Southern District of Californa, because title to and possession of the improvements passed to the plaintiff upon the execution of the contract in September, 1922, and whatever loss plaintiff sustained was due to the interference by a third person (the Mack Copper Company), for which the United States was in nowise responsible, is overcome by the peculiar facts in this case and by the decision in favor of the Government in the district court in which the United States recovered a judgment, including interest, of $34,604.61 against the Mack Copper Company. Stearns v. Lawrence, 83 Fed. 738. *440 Shedd v. Calumet Construction Co., 270 Fed. 942. Houser v. United States, 39 C. Cls. 508. Joo et al. v. United States, 60 C. Cls. 850. See also Litchfield v. Goodnow's Administrator, 123 U. S. 549.
In Williston on Sales (2d ed.), sec. 65, page 102, it is pointed out that:
“ The legal interest which a tenant has in articles affixed to the realty, but which he has a right to remove, is a right to sever the fixtures and revest himself with the title to them as personalty, * * *. A case where a tenant attempts to sell his fixtures to a third person should be sharply distinguished if the tenant is to sever them. Such a transaction involves an agreement on the part of the tenant to transfer the title to them and, therefore, it is a contract to sell goods. If it is contemplated that the buyer shall make the severance, he becomes owner of the property severed, not by virtue of an agreement by the tenant to transfer title, for the tenant has not the title, but only a power on severance to regain title, but by virtue of this power transferred by the tenant.
“Agreements are not infrequently made for the sale of buildings or of the materials in standing buildings. If the contract is to sell and deliver a house, even though the house is at the time of the bargain affixed to the realty, it is a contract for the sale of goods, for the parties contract to buy and sell a house separated from the realty and moved from its foundations. On the other hand, if the parties attempt to make a present transfer of a building or materials fixed in a building, it is evident that they are attempting to make a sale of realty, even though it is also agreed that the subject matter of the sale shall be severed within a short time, * * * 35
One of the principal features of the contract here in question was, therefore, the right to remove the improvements which the defendant did not make good and as result of which the plaintiff sustained the loss which is here claimed. The facts and circumstances in this case distinguish it from the case of Tyrrell v. United States, supra. In that case it appeared that before the contract was signed the plaintiff had been apprised by the land company that it claimed ownership of the buildings and that the plaintiff had entered into negotiations with that company to obtain a release of its claims. After the contract had been executed the plaintiff was on the property, had opened up an office on *441 the disputed premises, and had removed materials for some time before the landowner interfered. The United States knew nothing about the adverse claim until the plaintiff gave it notice of the interference bj the land owner. In this case the United States was the only party aware of the adverse claim and concealed that fact from the bidders and from the plaintiff at the time it made its bid and at the time the contract was entered into.
Paragraph 4 (K) of the specifications provided that “ Releases from any part of the work required in these specifications by the landowner are not permitted, except in the case of removal of concrete foundations, platforms, and so on, in the warehouse area. Such release must be given in writing, and will not become legal unless approved by the Quartermaster General of the Army.”
After the district court had entered a decree and judgment in favor of the United States and alter the plaintiff had entered upon the Mack Copper Company land and was engaged in wrecking and removing the improvements, the water system, and all piping within a distance of the surface of the ground specified in the contract, and before he had taken up the matter of the removal of the large septic tank upon the premises of the Mack Copper Company, that company proposed to the plaintiff that it desired to acquire the light, telegraph, and telephone poles standing upon the premises as they were and also the water system, and that in consideration therefor the Mack Copper Company would pay the plaintiff $1,080 and release the plaintiff from his obligation to remove the sewer and water systems, the light, telegraph, and telephone poles and railroad ties, and in addition release it from its requirement to fill certain trenches and holes. This agreement was reduced to writing and was entered, into June 5, 1925, and was approved by the proper official of the defendant. In connection with this transaction counsel for the defendant insists that the plaintiff was relieved of the removal of the septic tank, which, defendant's counsel insists, should reduce its damages by $14,000. TTe think the matter of the removal of the septic tank was entirely taken out of these proceedings by the *442 agreement entered into between the parties and approved by the defendant that the tank should remain on the land of the Mack Copper Company. In any event there is no proof to sustain the contention that plaintiff’s damages should, be reduced by $14,000, or any amount, on account of his release, but, on the contrary, the preponderance of evidence shows that the cost of removal of the entire septic tank would not have exceeded $1,000.
In entering into the agreement with the Mack Copper-Company the plaintiff considered that he would make a profit from the removal of the light, telegraph, and telephone poles, and the entire water system over and above the cost of removal thereof, including the cost of removing the septic tank, and the consideration paid by the Mack Copper Company was upon this theory. We may not say, therefore, that the plaintiff profited by being released from the removal of the septic tank any more than he would have been had he proceeded to wreck and remove all of the property as he had agreed.
The facts definitely establish the total of plaintiff’s actual loss and damages in the amount of $63,618.82, which consists of his actual expenses, losses, and damages less $2,— 267.16, being the amount it would have cost him to remove the improvements which the Mack Copper Company or its representatives removed and converted to their own use. This amount he is entitled to recover. Miller v. United States, 49 C. Cls. 276. Snare & Triest Co. v. United States, 43 C. Cls. 364. Bulkley v. United States, 19 Wall. 37. United States v. Behan, 110 U. S. 338. United States v. Wyckoff Pipe & Creosoting Co., Inc., 271 U. S. 263.
Plaintiff also claims interest at 6 per cent upon the total amount of his loss from February, 1925, when the defendant secured to him the right of entry upon the Mack Copper Company land for delivery to him possession of and the right to remove the improvements thereon, but, under the provisions of section 177 of the Judicial Code, which provides that no interest shall be allowed on any claim up to the time of the rendition of judgment thereon by the Court of Claims, unless upon a contract expressly stipulating for *443 the payment of interest, this claim of plaintiff must be de-niecl.
Judgment in plaintiff’s favor for $63,618.82 will be entered. It is so ordered.
Whaley, Judge; Williams, Judge; GeeeN, Judge; and Booth, Ghief Justice, concur.