[No. 24399.   Department Two.   June 14, 1933.]

KNICKERBOCKER COMPANY, *Respondent,* v. PEDER P. GJARDE, *Appellant.*[1]

[1]Reported in 22 P. (2d) 987.

*Tucker & Tucker,* for appellant.

*Wright, Jones & Bronson,* for respondent.

TOLMAN, J.—This is an action to recover damages arising out of defective work in the performance of a building contract. The defendant, Gjarde, as the contractor, by a written agreement with the owner, the plaintiff here, undertook to erect a building to be used for manufacturing and business purposes by the Crescent Manufacturing Company, a corporation closely affiliated with the owner, the Knickerbocker Company.

Among other things, the specifications provided for floors of concrete, to be of what is known to the trade as monolithic construction. In order to so construct the floors, each floor had to be poured as the walls reached the proper level, and, of course, all of the floors had to be poured before the roof was on. So, necessarily, these floors had no protection from the weather unless such protection was specially provided by the contractor. Shortly after the third floor was poured and before the concrete had set, there came a rain, or perhaps a succession of rain storms, which, in spite of the contractor's efforts to meet the situation, resulted in a surface which was pitted and rough, making the third floor unsuitable for the use for which it was intended, and lacking the finish and qualities called for by the specifications.

When the building was accepted by the owner and the tenant, the situation as it then appeared was known to all parties; and it was agreed that, by accepting the building, the owner waived none of its rights to have this situation remedied, and that the contractor should, as and if time and use demonstrated the necessity therefor, under the guaranty in his contract against defective work, provide such repairs or

reconstruct the surface of the floor so as to make it reasonably usable and satisfactory.

A few months after the building was put in use, the contractor was called upon to make good his guaranty, and promptly responded by attempting some minor repairs to the floor. These proving inadequate, he then laid a new slab, or top coating, an inch or an inch and a quarter in thickness, reinforced with wire netting over the entire defective area. This, as the contractor now willingly admits, proved to be an entire failure. He thereafter made a second attempt, and taking out entirely the work we have just described, he attempted to construct an entire new surface, discussing his methods with the architect and proceeding in a manner which he hoped and believed would be successful. He still contends that this last attempt was largely successful, though admittedly not wholly so. The tenant and the owner were, however, still unsatisfied, and called upon the contractor to again correct the defects in his work and furnish a floor which would substantially comply with the specifications. The contractor declined to do anything more; and the owner thereupon contracted with another, who laid a satisfactory surface on the floor, and for this work the owner paid $1,965.

Thereafter, this action was brought to recover the $1,965 so paid as the reasonable and necessary cost of doing the work required to make good the contractor's default, together with another cause of action covering the cost to the tenant of three times moving its machinery, equipment and merchandise, made necessary by the three separate attempts to repair and resurface the floor. This cost, amounting to the sum of $1,822.68, it was alleged the owner had paid to the tenant to make good the actual loss suffered by the tenant by reason of the necessity of vacating the space each time repairs

were undertaken. Another item was also included in the complaint, but not allowed by the trial court, and, since the plaintiff does not complain of its disallowance, it will not be considered here.

The case was tried to the court, sitting without a jury; exhaustive findings of fact were made, sustaining the plaintiff's position in every particular. Conclusions followed to the effect that the plaintiff was entitled to judgment for $1,965 on its first cause of action and to recover the further sum of $1,050, the reasonable cost of the tenant's three removals, for which it had reimbursed its tenant. A judgment against the defendant in the sum of $3,015 and costs followed; and from that judgment, the defendant has appealed to this court.

A careful reading of the evidence convinces us that it does not preponderate against the findings of the trial court upon any vital point. We shall therefore not further discuss the facts, except incidentally, and will direct our attention to the law which must be applied to the facts so found.

Appellant first argues that, when an owner demands the erection of a building during inclement weather, he assumes the risk of the effects of the weather upon the work, provided the contractor uses the usual care. The trouble with that argument here is that the record discloses no basis of fact upon which it can rest. The contract was made in August for a building to be completed by January first, following. It specified the kind and character of the material to be used, and also the final results to be accomplished; but, as we read it and so far as the trial court found, the contractor was wholly independent and free to use his own methods in producing the required results. Presumably, he knew as much about the seasons and the weather to be expected as did the owner, and it was

his duty under the conditions here shown to plan and conduct his work so as to protect it from all ordinary weather conditions.

Moreover, appellant himself so construed the contract, and at least twice attempted, at his own expense, to make good the damage caused by his failure to protect the work from the weather. He cannot now consistently contend for a different construction of the contract. The cases cited by the appellant on this point have no application to the facts of this case.

Appellant seems to contend that, at least in his last and final attempt to bring the surface of the floor up to the requirements of the specifications, he followed the directions of the architect, and if he failed in any particular, the fault lay with the architect. Again, the facts and the findings are against him. Undoubtedly, he did discuss the problem with the architect, but his own testimony, as well as the testimony of the architect, convinces us that the architect made no attempt to direct how or by what method the defect should be remedied.

It is urged that the award for resurfacing the floor was excessive for a number of reasons: (a) because the price paid was too high; (b) because, instead of 5100 square feet which was resurfaced, the appellant's testimony that only fifteen per cent of that area needed resurfacing should be accepted, or, if not, that then testimony on behalf of respondent that the cracked, broken and loose portions were about eighty-five per cent of the whole floor should be the limit in computing the allowance. These contentions overlook the findings, which are supported by the evidence, to the effect that the price paid was a reasonable one; and that while, perhaps, only eighty-five per cent of the entire area was defective, yet the testimony rather

clearly showed that the good had to come out with the bad to insure a proper result. Patching would have resulted in a surface which could not be used with reasonably good results, if not an entire failure; and, at best, no patching could produce the results which the specifications require.

Appellant next contends that, in such a case as this, even if the cost of repairs and replacements is recoverable, the damage should be strictly limited thereto, and that the interruption of the occupancy and loss of the use of the building is too remote. We do not think so. Appellant was well informed as to the use to which the building would be put, and it must have been within the contemplation of the parties that, if defective work interfered with the intended use of the building, loss would necessarily follow. We think the loss here involved is as direct and natural a result of the defective work as some of the items considered in the case of *DeHoney v. Gjarde,* 134 Wash. 647, 236 Pac. 290.

Finally, it is urged that the owner was not legally bound to make good the tenant's loss, and hence cannot now recover the amount so voluntarily paid. This, again, ignores important facts expressly found by the trial court or clearly established by the record. The building was built for this tenant, expressly designed for its use, the lease to take effect when the building was completed. The owner and the tenant were closely allied. In fact, one was but a subsidiary of the other. Through common officers, both the owner and the tenant accepted the building conditionally. The tenant was entitled to undisturbed possession of a building such as it had contracted to take. The landlord was obligated to furnish such a building, or to compensate its tenant for its failure so to do. Suppose, therefore, the landlord had, itself, at its own

expense moved the tenant's effects so as to permit the making of the repairs, would it thereby have done any more than its plain duty? If not, then what practical difference does it make to the contractor that, instead of doing the actual work of removal, the landlord accomplished the same result by paying to the tenant its costs of doing what the landlord should have done? From the standpoint of the contract the answer must be "none".

The record here indicates no attempt by motion or demurrer to raise this question in advance of the trial so that it could be obviated by bringing in the tenant as a party or by some other proper amendment; and for that reason, and because the appellant has been in no way prejudiced in making his defense, and, perhaps, also on the theory of equitable assignment or subrogation of the landlord to the tenant's rights by making the payment, we feel that there is no reason why we should now disturb the judgment on this cause of action.

The judgment is affirmed.

BEALS, C. J., MAIN, STEINERT, and BLAKE, JJ., concur.