[No. 28132.   Department One.   January 7, 1941.]

HARRY BYRNE, *Appellant*, v. BELLINGHAM CONSOLIDATED SCHOOL DISTRICT NO. 301, *Respondent*.[1]

[1]Reported in 108 P. (2d) 791.

22

*Laurance S. Carlson,* for appellant.

*John A. Kellogg,* for respondent.

STEINERT, J.—Plaintiff, an electrical contractor, brought this action to recover damages alleged to have been sustained by him and his assignor because of the delay to which they had been subjected during their performance of certain work connected with the construction of a school building. Trial before the court, without a jury, resulted in findings from which the court concluded that plaintiff was not entitled to recover. From a judgment of dismissal, plaintiff has appealed.

On or about October 14, 1936, the Henrikson-Alstrom Construction Company, hereinafter referred to as the general contractor, entered into a written contract with respondent, Bellingham Consolidated School District No. 301, Whatcom county, Washington, for the construction of a school building in the city of Bellingham at an estimated cost of approximately eight hundred thousand dollars. At about the same time, W. A. Watts, doing business as Watts Electric Company, entered into a written contract with respondent

for the performance of certain electrical work upon, and in connection with the construction of, the building. It is that contract with which we are here primarily concerned. A third, contemporaneous contract was executed by and between respondent and Arthur J. Blyth for the performance by the latter of certain mechanical work upon the same building. An architect was employed by respondent as its agent to supervise and direct the entire construction. The school building was a Federal works project, which required that the work be done under the supervision and direction of the public works administration, and in the performance of which at least ninety per cent of the persons employed were to be taken from the public relief rolls.

Each of the three contracts provided, among other things, that the work contracted for was to be completed before June 1, 1937; that liquidated damages in the sum of fifty dollars was to be paid to respondent for each day that the work remained uncompleted after that date; that all time limits were of the essence of the particular contract; that the general contractor was to prepare a progress chart, and that all other contractors were to conform to the progress of the general contractor; that each contractor, including the general contractor, was to maintain on his work, during its progress, a competent superintendent, who was not to be changed except with the consent of the architect; that each contractor was to coordinate his work with that of the other contractors; that each contractor was to employ, so far as possible, such methods and means in carrying out his work as would not cause any interruption or interference with any other contractor; that the architect was authorized to withhold from each contractor any certificate of payment to the extent that might be necessary in order to protect respondent

from loss on account of damage to any other contractor; and that each contractor was to pay for any damage caused to another contractor, and, if such other contractor should sue respondent for such damage, the party at fault was to pay any judgment obtained against respondent.

The two principal provisions of the contract, in so far as this controversy is concerned, read as follows:

"Art. 18. Delays and Extension of Time.—If the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner [respondent] or the Architect, or of any employe of either, or by any other Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Contractor's control, or by delay authorized by the Architect pending arbitration, or by any cause which the Architect shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the architect may decide. . . .

"This article does not exclude the recovery of damages for delay by either party under other provisions in the contract documents."

"Art. 31. Damages.—If either party to this Contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage.

"Claims under this clause shall be made in writing to the party liable within a reasonable time at the first observance of such damage and not later than the time of final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration."

We shall hereinafter refer to these two series of provisions as article 18 and article 31, respectively.

As required by the contracts, Watts and the general contractor and Blyth, respectively, furnished perform-

ance bonds guaranteeing faithful performance of their particular work.

Watts began work under his contract in November, 1936, as soon as he was directed to do so by the architect, and was furnished with a progress schedule prepared by the general contractor providing for the completion of the building before June 1, 1937. Watts, in turn, also made up a progress schedule, which tied in the electrical work with that of the general contractor, and likewise provided for completion before June 1, 1937.

On January 18, 1937, Watts executed to Harry Byrne, doing business as North Coast Electric Company, and hereinafter referred to as appellant, an assignment of Watts' contract with respondent, together with all moneys forthcoming thereon. Appellant, it appears, was a wholesaler of electrical supplies who had guaranteed Watts' bond to respondent and had also furnished all of the material and funds necessary to be used in performing that contract. After the assignment, appellant employed Watts to continue with, and complete, the electrical work in the building.

The assignment was approved, as provided for in the contract, by the state director of the public works administration on March 17, 1937. At that time, the work on Watts' contract had been completed to the extent of only about 11.6%, and the work of the general contractor had been completed to the extent of only about 27.62%. The electrical work, of course, could not be done except in accordance with the progress of the work of the general contractor, nor could the electrical work be finished in all its details until the building itself was, for all practical purposes, completed. It is not disputed that, if the building had progressed to completion according to the general contract, appellant would likewise have been able to com-

plete the electrical work before June 1, 1937, as called for by Watts' contract. However, the building was not completed until on or about April 15, 1938, which was ten and one-half months after the completion date specified in the general contract. As a consequence, the electrical work required eighteen months for its completion, instead of the maximum period of seven and one-half months provided for in Watts' contract.

When it became demonstrably certain that the building would not be completed by June 1, 1937, or by the other successive dates hereinafter mentioned, respondent, through its architect, granted a series of time extentions to the general contractor and to the other contractors, including Watts and appellant. These time extensions and the circumstances under which they were granted constitute the basis of this controversy. We will, therefore, note them with some particularity, and, in doing so, will, for emphasis, italicize certain portions of the written evidence.

On March 22, 1937, at the time when the general construction work had progressed to a point of only about 27.62% of completion, respondent, through its school board, and at the request of the general contractor, granted the latter an extension of time to July 31, 1937, for the completion of that work. The reason assigned for the extension was that the weather during the preceding months of December, January, and February had been too cold to permit the carrying on of the work, especially the pouring of concrete. At the suggestion of the architect, similar extensions were at the same time granted to the other contractors, although it does not appear that they had made any requests therefor. These extensions of time to the general contractor and to the other contractors included waivers of liquidated damages during the extension period.

Following that formal action taken by the school board, the architect, on March 24, 1937, wrote to Watts, asking him to make a written "request" for an extension of time on his contract to July 31, 1937, and further suggesting that:

"In this letter state that you are requesting this extension of time because of the delay in the work of the general contractor due to cold weather and your work can only progress as fast as the general work."

Despite the length of the time extension, the building was not completed on July 31, 1937.

On July 30, 1937, and successively thereafter on September 27, 1937, and November 23, 1937, the school board made similar grants which by stages extended the time for the completion of the general contractor's work to December 31, 1937. The reasons assigned for those extensions were weather conditions, scarcity of skilled labor, and the "six-hour" labor day.

Those extensions to the general contractor, however, were *"without* waiver of liquidated damages." Corresponding extensions were at the same time granted to the other contractors, including Watts, but *"with* waiver of liquidated damages." In each instance, also, Watts was requested by the architect, in a letter similar to the one quoted above, to make written "request" for such extension on grounds suggested by the architect.

On November 23, 1937, which was the day on which the last mentioned extension was granted, appellant advised respondent by letter that he would enter a claim for damages "in the form of additional cost incurred on this job, due to several months extra time required to finish the job."

On February 21, 1938, the school board again granted the general contractor an extension of time, to February 15, 1938, but likewise *"without* waiver of liqui-

dated damages," and at the same time granted corresponding extensions to the other contractors, including appellant, but *"with* waiver of liquidated damages." In his "request" for that extension, which had been evoked by the architect, appellant expressly stated that it was "without relinquishing any rights or causes of action."

Finally, on May 9, 1938, shortly after the work of construction had in all respects been completed, respondent, through its school board, granted the general contractor an extension of time to the date of actual completion of the building. That extension, however, was *"with* waiver of liquidated damages *for this and all prior extensions of time heretofore granted."* Appellant's work had been completed and accepted at that time.

On June 6, 1938, appellant advised respondent by letter that he was claiming extra compensation due to increased cost of performing the contract for electrical work. On July 26, 1938, appellant presented a formal claim, containing three items of alleged damage: (1) $227.53 for interest on funds retained by respondent after the completion date fixed in the contract, namely June 1, 1937; (2) $2,625.00 for additional costs incurred by appellant after June 1, 1937; and (3) $44.24 for cost of insurance accruing after the same date. This action was subsequently brought by appellant to recover the total amount of the claim.

We begin our discussion of the legal phases of the case with a consideration of the reciprocal obligations of the parties to the contract here involved.

Watts and his assignee, the appellant, were obligated to complete the electrical work before June 1, 1937, and were to become liable for liquidated damages in the sum of fifty dollars for each day of delay beyond that time. Respondent, on the other hand, was

obligated, under the clear implications of the contract, to have and to keep the building in such a state of forwardness as would enable Watts and appellant to complete their contract within the time specified. The principle of law affecting respondent's reciprocal obligation has been frequently stated and upheld.

In *Stehlin-Miller-Henes Co. v. Bridgeport,* 97 Conn. 657, 117 Atl. 811, wherein the facts were very similar to those involved here, the court said:

"The plaintiff claimed that this implied contract was, that the defendant must provide a building in a proper state of forwardness, so that the plaintiff's work could be installed within the time limited in its contracts with defendant. The defendant disputed this claim and insisted upon the argument in this court that there was no authority to be found supporting it. The trial court, in sustaining the demurrer, erroneously held the rule to be contrary to plaintiff's position. The rule is undoubted in circumstances such as were present in this case, that an implied contract arose on the part of the defendant to keep the work on the building, whether done by itself or other contractors, in such a state of forwardness as would enable the plaintiff to complete its contracts within the time limited. [Citing cases.]"

In *State v. Feigel,* 204 Ind. 438, 178 N. E. 435, a similar controversy arose over the breach of an implied obligation on the part of the state of Indiana to provide a right of way for the road contractor during the performance of his work. Touching the point here under consideration, the court said:

"Looking at this contract in the light of the decisions referred to, it occurs to us that the plainest principles of justice require the implication of a covenant on the part of the state to provide a right of way so as to enable the appellee [contractor] to prosecute his work to the utmost advantage and economy. Any other construction would destroy the mutuality of the agreement, and put it practically in the power of the state

to defeat performance by the contractor. It is true that the contract does not expressly state that appellant [the state] shall furnish the right of way, nor does it fix any definite time when the same should be acquired; but the clearest implication arises from the language of the agreement and its avowed object and interest that the right of way over which the proposed highway was to be constructed should be secured by the state."

Other cases holding to this principle are the following: *Bates & Rogers Const. Co. v. Board of Commissioners* (Ohio), 274 Fed. 659; *Mansfield v. New York Central & H. R. R. Co.*, 102 N. Y. 205, 6 N. E. 386; *Norcross v. Wills*, 198 N. Y. 336, 91 N. E. 803; *Johnson v. New York*, 231 N. Y. 564, 132 N. E. 890; *Brady & Co. v. Board of Education*, 222 App. Div. 504, 226 N. Y. Supp. 707. Cf. *Guerini Stone Co. v. Carlin Const. Co.*, 248 U. S. 334, 340, 63 L. Ed. 275, 39 S. Ct. 102; *Indianapolis Northern Traction Co. v. Brennan*, 174 Ind. 1, 87 N. E. 215, 90 N. E. 65, 68, 91 N. E. 503, 30 L. R. A. (N. S.) 85.

Although no case from this jurisdiction involving closely analogous facts has been called to our attention, the principle above stated has been generally recognized and accepted by this court. *McCartney v. Glassford*, 1 Wash. 579, 20 Pac. 423; *Nelson v. Seattle*, 180 Wash. 1, 23, 38 P. (2d) 1034; *Harms, Inc. v. Meade*, 186 Wash. 287, 57 P. (2d) 1052.

The fact that the delay, in this instance, may have been caused by the general contractor, does not absolve the respondent. From the legal aspect, respondent was required to do, or to have done, the work of constructing the building into which the electrical work was to be installed. *Miller v. United States*, 49 Ct. Cl. 276. Moreover, article 31 of the contract, *supra*, provided that, if either party to the contract suffered damages by reason of the wrongful act or neglect of

the other party, or *of anyone employed by him,* the damaged party was to be reimbursed by the defaulting party.

We come now to what the parties themselves consider to be the crucial point in the case. This involves the construction of articles 18 and 31, above quoted. Article 18, it will be recalled, provided that, if the contractor should be delayed at any time in the progress of the work by any act or neglect of the owner, the architect, or any employee of either, or by any other contractor employed by the owner, or by the occurrence of any one of certain contingencies therein specifically mentioned, including any cause which the architect should decide was sufficient to justify a delay, then the time of completion should be extended for such a period as the architect should deem reasonable. Article 18, however, further provided specifically that its provisions did not exclude the recovery of damages for delay by either party "under other provisions in the contract documents." It will also be recalled that article 31 provided that, if either party to the contract should suffer damages *in any manner* because of any wrongful act or *neglect of the other party,* or *of anyone employed by him,* the party damaged should be reimbursed for such damages by the other party.

It is the contention of the respondent, first, that by the terms of the contract appellant's sole remedy for delay in the construction of the building was the right to obtain a corresponding extension, or extensions, of time for the completion of his work. Appellant, on the other hand, contends that, in addition to that remedy, he was also entitled to recover for actual damages sustained by him as the result of such delay.

The rule announced by the courts in practically every state in the union, including this state, is that, in the absence of any provision in the contract to the

contrary, a building or construction contractor who has been delayed in the performance of his contract may recover from the owner of the building damages for such delay if caused by the default of the owner. *Hetherington-Berner Co. v. Spokane,* 75 Wash. 660, 135 Pac. 484, 115 A. L. R. 66. Such right of recovery is predicated upon the breach of what we have already stated is an implied obligation on the part of an owner to furnish to the contractor a building in a state of forwardness sufficient to enable the contractor to complete his contract within the time limit.

In the contract here under consideration, there is no express provision against the remedy sought by appellant, and whether or not any such provision is to be implied, is one of the questions now to be determined.

Respondent relies largely upon the case of *Goss v. Northern Pacific Hospital Ass'n,* 50 Wash. 236, 96 Pac. 1078, which, it insists, is controlling of the case at bar. In that case, the contract contained the following provision:

" 'Should the contractor be obstructed or delayed in the prosecution or completion of his work by the act, neglect, delay or default of the owner or the architects, or of any other contractor employed by the owner upon the work, or by any damage which may happen by fire, lightning, earthquake or cyclone, or by the abandonment of the work by the employees through no default of the contractor, then the time herein fixed for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of the causes aforesaid; . . . ' "

Delay by the plumbing contractor resulted in damage to the general contractor, and the latter brought an action against the owner of the premises to recover damages. Recovery was denied on the ground that extension of time of performance provided for in the

contract marked the extent of the general contractor's remedy for default. This court expressed its reasons for so holding in the following language:

"For conditions which arise in the execution of a contract and for which the contract itself makes no provision, the courts are at liberty to apply the ordinary legal remedies when these conditions become a subject of controversy between the contractors; but where the probability of the happening of the condition has been foreseen and a remedy is provided for its happening, the presumption is that the parties intended the prescribed remedy as the sole remedy for the condition, and this presumption is controlling *where there is nothing in the contract itself* or in the conditions surrounding its execution that *necessitates a different conclusion.* So in this case, since the parties foresaw that the appellant might be delayed in the execution of his part of the work by the failure of the party having the contract for the plumbing and heating plant to perform its work on time, and provided in the contract that the remedy therefor should be an extension of time on his part to perform the work, the presumption arises that this was intended to measure the rights of the contractor thereunder. Is there anything in the contract itself, or in the circumstances surrounding it, that precludes the idea that it was so intended? We see nothing that works against the conclusiveness of the presumption." (Italics ours.)

The first paragraph of article 18, previously quoted, is clearly analogous to the contractual provisions which determined the result in the *Goss* case, and if that paragraph contained the only contractual provision involved here, respondent's contention that the *Goss* case is controlling would be convincing. However, the last paragraph of article 18 contains a provision that, so far as we have been able to discover from an examination of the records and from the opinion in the *Goss* decision, did not appear in the contract involved in that case. Nor, so far as we have likewise been able to

learn, were there any provisions in the *Goss* case comparable to those of article 31, quoted above. Indeed, the *Goss* case contains its own exception in the language thereof which we have italicized in the above quotation from that opinion. The last paragraph of article 18, read in connection with article 31, makes specific provision for a remedy in damages, in addition to the right of time extension; and, consequently, there is no occasion, or room, for a "presumption" to the contrary.

Respondent, however, further contends that the proper interpretation to be placed upon articles 18 and 31 is that delays *in the progress of the work* resulting from any of the causes specified by the first paragraph of article 18 are remediable only by time extensions, while the last paragraph of article 18, pertaining to damages, has reference only to such delays as are cognizable "under other provisions in the contract documents." Expressed otherwise, the contention is that the delays here involved fall within the group of delays provided for in the first paragraph of article 18, for which delays extensions of time are the only remedy, and that *damages* are recoverable only for such delays as are not comprehended within the former group.

We do not agree with respondent's contention. In our opinion, the construction contended for is a very strained one. Besides, it rests upon the conclusion that the phrase "under other provisions in the contract documents," appearing in the last paragraph of article 18, modifies the antecedent word "delay"; whereas, in our opinion, that phrase modifies the antecedent word "recovery." Our interpretation, as we view it, is more consistent with the context of article 18 and with the provisions of the contract read in its entirety than is the construction contended for by respondent.

The most that can possibly be said for respondent's position is that the provision in question of article 18, is, standing alone, subject as much to the one interpretation as it is to the other. Any ambiguity therein must, however, be resolved in appellant's favor under the familiar rule that ambiguities in a written instrument are to be resolved against the party who prepared the instrument. *Wenatchee Production Credit Ass'n v. Pacific Fruit & Produce Co.,* 199 Wash. 651, 92 P. (2d) 883. The contract here in question was prepared by respondent.

Another reason for resolving the ambiguity, if any, in appellant's favor is that, while contracting parties may provide for a limitation on the right to recover damages, the harshness of that result, in an instance such as this, calls for strict construction of the language relied upon to bar recovery.

Furthermore, in construing the contract, we must consider not merely a single provision thereof, but all its provisions as a whole. *Dew v. Pearson,* 73 Wash. 602, 132 Pac. 412; *Tacoma Mill Co. v. Northern Pac. R. Co.,* 89 Wash. 187, 154 Pac. 173; *Puget Sound International R. v. Everett,* 103 Wash. 495, 175 Pac. 40; *Wick v. Western Union Life Ins. Co.,* 104 Wash. 129, 175 Pac. 953; *State v. Comer,* 176 Wash. 257, 28 P. (2d) 1027; *Hollingsworth v. Robe Lumber Co.,* 182 Wash. 74, 45 P. (2d) 614.

Article 31 of the contract contains the unequivocal statement that reimbursement is to be allowed for damages sustained *"in any manner* because of *any* wrongful act or neglect." As already stated, the damages in this instance resulted, in the legal sense, from respondent's neglect to have the building in a proper state of forwardness to enable appellant to complete his contract within the time specified. To interpret article 18 in the manner contended for by respondent, would be to so

construe its language as to negative, in part, the clear, affirmative language of article 31. We prefer, instead, the interpretation which will render the language of the two articles consistent and harmonious.

The trial court appears to have been of the view that appellant, by accepting the extensions of time, waived any remedy that he might otherwise have had for failure of respondent, through the general contractor, to perform on time. It will be recalled that the time extensions granted to appellant and his assignor, Watts, were requested at the instigation of respondent's architect; they were not the result of voluntary requests by Watts or appellant. It is also to be observed that, under the facts shown above, the extensions to Watts and appellant were not matters of grace on the part of respondent, but were matters of duty provided for in the contract itself. In any event, acceptance by appellant of extensions of time, and his election to proceed with his work, did not constitute a waiver of his right to recover damages for the delay. *Selden Breck Const. Co. v. Regents of University of Michigan,* 274 Fed. 982; *Edge Moor Iron Co. v. United States,* 61 Ct. Cl. 392; 3 Williston on Contracts, 2024, § 704; 5 Williston on Contracts, 3749, § 1334.

Furthermore, the provisions for the extension of time and for the right to recover damages are entirely reconcilable.

"When a contract does fix a date or period of time, these two clauses are readily reconcilable. The first provision is designed to extend the time for the completion of the contract by the contractor in case of a delay caused by an owner, an architect, or others than himself mentioned in the contract. The second provision affords to each of the parties the right to be reimbursed for such damages as may be suffered by the delay of the other." *American Concrete Steel Co. v. Hart,* 285 Fed. 322.

For the reasons hereinabove given, we conclude that the contract in question did not exclude the right of appellant to recover for any damages caused by unreasonable delays by others in the progress of the work.

The only reasons assigned for the delay in the construction of the building were weather and labor conditions. Those factors, however, are immaterial upon the issues presented here. While, as respondent contends, those conditions may have justified the granting of time extensions, they have no bearing on appellant's right to recover damages for the breach of respondent's implied obligation to keep the construction work in a sufficient state of progress to allow timely completion of the electrical work. Such right of recovery could be adversely affected only if the conditions involved were sufficient, on the ground of impossibility of performance, to excuse the breach of respondent's implied obligation, or promise. Adverse weather and labor conditions do not, in this jurisdiction, have that effect. *Reichenbach v. Sage,* 13 Wash. 364, 43 Pac. 354, 52 Am. St. 51; *White v. Mitchell,* 123 Wash. 630, 213 Pac. 10; *Knickerbocker Co. v. Gjarde,* 173 Wash. 285, 22 P. (2d) 987.

Respondent further urges that appellant, assignee of Watts, should not be permitted to recover damages for delay because he knew, or ought to have known, at the time of taking the assignment, that it was impossible to complete the building by June 1, 1937. We fail to see how that fact can affect appellant's right of recovery. Appellant, by taking the assignment, merely "stepped into the shoes" of his assignor, and, having done so, became entitled to all the rights and remedies of his predecessor. The fact of assignment, the state of performance at the time of the assignment, and the assignee's alleged lack of diligence in

failing to determine the percentage of the completion at that time, are all immaterial.

Finally, respondent contends that appellant failed to give "reasonable notice" of his claim, as required by articles 31 and 34 of the contract.

Article 31 requires that the claim be made in writing to the party liable within a reasonable time "at the first observance of such damage and not later than the time of final payment." Article 34 merely provides that, if the contractor cause damage to any other contractor on the work, he shall, upon due notice, settle with such other contractor by agreement or arbitration. Respondent's contention upon this phase of the case is based upon two grounds:  (1) That appellant did not designate the contractor alleged to be responsible for the delay, and (2) that the first definite claim for damages was not given until November 23, 1937.

The party liable to appellant for the delay was, in the legal aspect, the respondent, to whom the notice was specifically given, and it was of no particular concern to appellant that some other contractor might in turn be liable to respondent.  Although appellant may also have had a claim against the general contractor for the delay, under article 34, he is not here asserting that claim.

Assuming, however, that the provisions, just noted, of articles 31 and 34 were applicable, it is obvious that it would have been a useless formality for appellant to have designated the contractor who he thought had occasioned the delay.  The record is clear and positive that the delay to appellant was caused initially by the fact that the general contractor did not complete construction of the building within the time limited by his contract.  Respondent was fully aware of that fact, and the "requests" for extension of time, proposed by

respondent's architect, were expressly based upon that consideration.

As to the timeliness of appellant's claim, it is true that the written notice to respondent was not given until November 23, 1937, which was more than four months after the completion date fixed in the contract. However, the purpose of the provision requiring notice was (1) to inform respondent of the situation, and (2) to enable respondent to protect itself against the party ultimately responsible. But respondent was already aware of the situation in all of its details, and appellant could not have given it any more knowledge than it already had.

The notice, though given in November, 1937, was sent in ample time to enable respondent fully to protect itself by recourse against the general contractor. The building was not completed until April, 1938. Appellant's notice was given five and one-half months before respondent's final waiver of liquidated damages as against the general contractor. Furthermore, under the terms of its contract with the general contractor, respondent could have retained out of the amounts owing to the latter a sufficient sum to reimburse itself for its liability to appellant. In addition to that, respondent had the performance bond of the general contractor guaranteeing faithful performance and payment by it of all obligations arising under its contract. It is clear, therefore, that respondent was in no wise prejudiced by the fact that appellant did not give notice sooner than he did.

The judgment is reversed, with direction to the trial court to make findings as to the amount of the damages sustained by appellant, and to enter judgment accordingly.

ROBINSON, DRIVER, and MAIN, JJ., concur.

BLAKE, C. J. (dissenting)—I dissent.

I think that appellant and his assignor having consented to the extension of time granted the general contractor and having requested and accepted corresponding extensions of time for themselves, waived whatever right they might have had to recover damages for being delayed in the performance of their work. While they requested extensions at the suggestion of the architect they were under no compulsion. No pressure was brought to bear upon them to make them accede to the architect's suggestion.

